EMMA T. HEALEY

*v.*

THE MUTUAL ACCIDENT ASSOCIATION OF THE NORTHWEST.

*Filed at Ottawa June 12, 1890.*

1. INSURANCE—*rule of construction.* Policies of insurance being signed by the insurer, only, and the language being that of the insurer, the provisions of the policy are usually construed most favorably for the insured in case of doubt or uncertainty in its terms. The policy must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to secure.

2. SAME—*accident policy—construction—death by accidental causes.* A policy of accident insurance is issued and accepted for the purpose of affording indemnity against accidents and death caused by accidental means, and its language must be construed with reference to the subject to which it is applied.

3. Death caused by accidentally taking and drinking poison, is a death produced by bodily injuries received by or through "external, violent and accidental means," within the spirit and meaning of a policy of insurance providing indemnity in case of death resulting through such causes. The injury in such case producing the death may be regarded as received through violent means.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. A. N. WATERMAN, Judge, presiding.

This was an action brought by Emma T. Healey, against the Mutual Accident Association of the Northwest, on a policy of accident insurance, or certificate of membership, issued by the company to John Healey, the husband of the plaintiff. The declaration contained three counts. The first count sets out the policy of insurance *in hæc verba,* and avers a compliance by John Healey with its terms and conditions, and his death on April 26, 1887. It is then averred that John Healey's death was produced by bodily injuries received by or through external, violent and accidental means, within the true intent and meaning of the certificate of such organization of said association, and of its by-laws, rules and regulations, to-wit, by accidentally taking and drinking poison, and that such injuries alone occasioned the said death of said John Healey within ninety days from the happening thereof, to-wit, on the same day of the happening thereof. The second count avers the facts substantially like the first. The third count of the declaration alleges, that on, etc., at, etc., "the said John Healey sustained bodily injuries, received by or through external, violent and accidental means, within the intent and meaning of the certificate of organization of the said association, and of its by-laws and the conditions annexed to the said certificate of membership, to-wit, the said John Healey accidentally swallowed an overdose or excessive quantity of a certain drug, to-wit, chloral, and thereby sustained bodily injuries, and the plaintiff avers that such injuries alone occasioned the death of the said John Healey," etc.

The policy, as set out in the declaration, provides: "The principal sum, represented by the payment of two dollars by each member in Division A of the association, as provided in its by-laws, (which sum, however, is not to exceed $5000,) to

be paid to Emma T. Healey, wife, if surviving, * * * within sixty days after sufficient proof that said member, at any time within the continuance of his membership, shall have sustained bodily injuries, received by or through external, violent and accidental means, within the intent and meaning of the certificate of the organization of said association, and of its by-laws and the conditions hereunto annexed, and such injuries alone shall have occasioned death within ninety days from the happening thereof." Following this is a provision for indemnity in case the assured is disabled from the prosecution of business pertaining to the occupation under which he receives the policy or certificate of membership.

Among the subsequent provisions or conditions of the policy is the following: "*Provided, always,* that benefits under this certificate shall not extend to hernia, nor to any bodily injury of which there shall be no external and visible sign, nor to any bodily injury happening, directly or indirectly, in consequence of disease, nor to any death or disability which may have been caused wholly or in part by bodily infirmities or disease existing prior or subsequent to the date of this certificate, or by the taking of poison, or by any surgical operation or medical or mechanical treatment, nor to any case except where the injury so received is the approximate and sole cause of disability or death."

To the declaration the defendant interposed a general demurrer, which the court sustained, and the plaintiff electing to stand by the declaration, judgment was rendered against her for costs. The judgment of the circuit court was affirmed in the Appellate Court, and for the purpose of reviewing the latter judgment the plaintiff brings the record into this court.

Messrs. Miller, Leman & Chase, for the plaintiff in error:

This policy of accident insurance is to be construed with regard to its furnishing the indemnity against accidents, and death from accidental or fortuitous means, which it is its object.

or office to provide, and which the insured sought for. Its language is to be construed with reference to the subject to which it is applied. *Insurance Co.* v. *Nelson*, 65 Ill. 415.

Words are to be taken in that sense to which the apparent object and intention of the parties limit them. *Paul* v. *Insurance Co.* 112 N. Y. 472.

Intermediate forms of expression, in such a case, are to be understood in a sense subservient to the general purpose of the contract. *Hoffman* v. *Insurance Co.* 32 N. Y. 413.

Words should not be taken in their broadest import, when they are equally appropriate in a sense limited to the object the parties had in view. *Hoffman* v. *Insurance Co.* 32 N. Y. 413.

Insurance policies are to be construed most strongly against the insurer, because the language is the language of the insurer. *Insurance Co.* v. *Scammon*, 100 Ill. 644; *Insurance Co.* v. *Robinson*, 64 id. 265.

The conditions and exceptions in a policy of insurance are to be construed strictly against the company, for whose benefit they are reserved, because they limit the principal obligation, and because they are conditions providing for disabilities and forfeitures. *Paul* v. *Insurance Co.* 112 N. Y. 472; *Hoffman* v. *Insurance Co.* 32 id. 413; May on Insurance, (2d ed.) 174, 175.

Applying these principles of construction, the following conclusions are the result:

*First*—That the accidental swallowing of an excessive quantity of a deadly drug, which produces death, is a bodily injury received by or through external, violent and accidental means, within the meaning of this policy. *Paul* v. *Insurance Co.* 121 N. Y. 472; 45 Hun, 313; *McGlinchey* v. *Casualty Co.* 80 Me. 251; *Reynolds* v. *Insurance Co.* 22 L. R. 820; *Winspear* v. *Insurance Co.* 43 L. J. Rep. 459; *Martin* v. *Insurance Co.* 1 Fost. & Fin. 505.

*Second*—That the provision in the policy that benefits thereunder should not extend to any bodily injury of which there should be no external or visible sign, applies only to injuries

not causing death, for which the policy provides for the payment of weekly benefits, and that the dead body is external and visible sign enough in case of death. *Mallory* v. *Insurance Co.* 47 N. Y. 52; *Paul* v. *Insurance Co.* 112 id.. 472; *McGlinchey* v. *Casualty Co.* 80 Me. 251.

*Third*—That "the taking of poison," within the meaning of the policy, does not refer to or include an accidental death from taking or swallowing a deadly drug or poison, but only to a case where the drug or poison was taken with a design to produce death, or by such culpable negligence as not to be accidental. *Paul* v. *Insurance Co.* 112 N. Y. 472; 45 Hun, 313; *Lawrence* v. *Insurance Co.* 5 Bradw. 280; *McGlinchey* v. *Casualty Co.* 80 Me. 251.

Mr. ALBERT H. VEEDER, and Mr. MASON B. LOOMIS, for the defendant in error:

It is not sufficient that the injury received was accidental,—it must also be external and violent. Death from the accidental taking of poison is not caused by any external act, or anything acting externally. *Bayless* v. *Insurance Co.* 14 Blatch. 143; *Hill* v. *Insurance Co.* 22 Hun, 187; *Pollock* v. *Accident Association,* 102 Pa. St. 230; *Trew* v. *Insurance Co.* 6 Hurl. & N. 838.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The question presented, although one of pleading, involves a construction of the policy·upon which the action was brought, and in placing a construction on the contract and in arriving at the intention of the contracting parties regard must be had to the object and purpose which were intended by the contracting parties. A policy of accidental insurance is issued and accepted for the purpose of furnishing indemnity against accidents, and death caused by accidental means, and the language of the policy must be construed with reference to the subject to which it is applied. (*Rockford Ins. Co.* v. *Nelson,* 65 Ill.

420.) Thus, a provision in a policy against loss by fire, avoiding the policy if the property becomes incumbered, has been held not to include incumbrance by judgment, although within the terms used. (*Bailey* v. *Insurance Co.* 80 N. Y. 21.) Again, policies of insurance being signed by the insurer, the language employed being that of the insurer, the provisions of the policy are usually construed most favorably for the insured in case of doubt or uncertainty in its terms. (*Niagara Fire Ins. Co.* v. *Scammon*, 100 Ill. 644.) "No rule in the interpretation of a policy is more fully established, or more imperative and controlling, than that which declares that in all cases it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss must, in preference, be adopted." May on Insurance, (2d ed.) sec. 175.

Keeping in view these well settled rules of construction, the question to be determined is, whether the death in this case is one falling within the spirit of the policy.

The death of John Healey, the assured, is a conceded fact; but it is said the policy is an assurance against death by external, violent and accidental means, and that death did not ensue from external, violent and accidental means, within the meaning of the policy. Under the averments of the first and second counts it is manifest that death ensued by accidental means, as it is expressly averred that death was produced by accidentally taking and drinking poison. The demurrer admits this averment of the declaration, and the fact that death ensued from accidental means stands admitted by the record. But to bring the case within the terms of the policy it devolved upon the plaintiff to aver and establish, not only that death ensued from accidental means, but also from external and violent means. The next inquiry, therefore, to be determined,

36—133 ILL.

is whether, within the meaning of the policy, death resulted from external and violent means.

While the authorities, in cases similar to the case before us, are not entirely harmonious, yet we think that the decided weight of authority is in support of the view that death in this case was caused by external and violent means. In *McGlinchey* v. *Fidelity and Casualty Co.* 80 Me. 251, the insured was riding in a covered carriage. The horse became frightened, and ran some distance before he could be controlled. In running, the horse came near collision with other teams, but no collision occurred, nor was the carriage upset or any one injured. However, immediately after the runaway the insured became sick, and died in an hour after the accident. The question arose whether death was caused from bodily injuries through external, violent and accidental means, within the meaning of the policy, and the court held that it was. In the case cited, the body of the deceased bore no marks of physical injury, nor did the body come in contact with any physical object during the time of the accident, but death, no doubt, resulted from physical strain and mental shock.

In *Insurance Co.* v. *Crandall*, 120 U. S. 527, it was held that an insane man who takes his own life dies from an injury produced by external, accidental and violent means.

In the cases of *Trew* v. *Assurance Co.* 5 Hurl. & N. 211, (and, on appeal, 6 Hurl. & N. 839, 7 Jur. N. S. 878,) *Reynolds* v. *Accidental Ins. Co.* 22 L. T. (N. S.) 820, and *Winspear* v. *Accident Ins. Co.* 42 id. 90, (43 L. J. Rep. 459, affirmed 6 Q. B. D. 42,) it was held that death from drowning was caused by external and violent means, within the meaning of an accident policy.

In the *Trew case*, which may be regarded as a leading one on the subject, it was argued, "whereas, from the action of the water there is no external injury, death by the action of the water is not within the meaning of the policy." In reply to the argument the court said: "That argument, if carried to

its extreme length, would apply to every case where death was immediate. If a man fell from the top of a house, or overboard from a ship, and was killed, or if a man was suffocated by the smoke of a house on fire, such cases would be excluded from the policy, and the effect would be that policies of this kind, in many cases where death resulted from accident, would afford no protection whatever to the assured. We ought not to give these policies a construction which will defeat the protection of the assured in a large number of cases." Hurl. & N. 843.

In *Paul* v. *Travelers' Ins. Co.* 112 N. Y. 472, the policy was substantially like the one in question here,—indemnifying against injuries caused by external, violent and accidental means. The insured died from inhaling illuminating gas. He was stopping at a hotel in New York City. He was found dead in his bed, the room being filled with gas. When found the deceased lay in his bed like a man asleep, without any external or visible signs of injury upon his body. An action on the policy was sustained, and in disposing of the question whether the injuries were caused by external and violent means, the court said: "As to the point raised by the appellant, that the death was not caused by external and violent means, within the meaning of the policy, we think it a sufficient answer that the gas in the atmosphere, as an external cause, was a violent agency, in the sense that it worked upon the intestate so as to cause his death. That a death is the result of accident, or is unnatural, imports an external and violent agency as the cause. The cases collated in the respondent's brief sufficiently establish that as a proposition. *Trew* v. *Assurance Co.* 7 Jur. (N. S.) 878; *Reynolds* v. *Accidental Ins. Co.* 22 L. T. (N. S.) 820; *McGlinchey* v. *Fidelity and Casualty Co.* 80 Me. 251."

If, as held in the case last cited, death from inhaling poisonous gas is to be regarded as caused by external and violent means, upon the same principle, death resulting from the accidental taking of poison must be regarded as resulting from

external and violent means. Again, where a person is drowned, having been suffocated by the action of the water in the lungs, if a death in such case is to be regarded as caused or produced by external and violent means, as held in the cases heretofore cited, for the same reason a similar rule must be applied where death resulted as alleged in this case. Here the death arose from accidentally taking and drinking poison, and we are constrained to hold, when such is the case, the injury resulting in death may be regarded as received through violent means. If a person should receive a gun-shot wound in the body, resulting in death, it would be conceded that death ensued from violent and external means; for a like reason, poison taken into the stomach, producing death, may also be treated as an external, violent means. Indeed, we are inclined to concur with what was said by the Court of Appeals of New York, in the case last cited, that where a death is the result of accident, or is unnatural, implies an external and violent agency as the cause.

We have been cited to a few cases holding a different rule. *Hill* v. *Hartford Accident Ins. Co.* 22 Hun, 187.—This case was overruled by the later case of *Paul* v. *Insurance Co.* cited *supra.* *Pollock* v. *United States Mutual Accident Association*, 102 Pa. St. 230, is a case sustaining the position of the defendant; but while we recognize the high ability of the court in which the case was decided, we are not disposed to follow the rule there adopted. We think the rule established by the Court of Appeals of New York one better calculated to carry out the true intention of the parties when the contract of insurance was entered into, and one, too, more nearly in harmony with the current of authority bearing on the question.

The judgment of the Appellate and circuit courts will be reversed, and the cause remanded to the circuit court for further proceedings in conformity to this opinion.

*Judgment reversed.*