THE TRAVELERS' INSURANCE COMPANY

*v.*

MARY J. DUNLAP.

*Filed at Ottawa March 28, 1896.*

1. INSURANCE—*clause of accident policy exempting from liability for "taking poison" construed.* Drinking carbolic acid by mistake for peppermint is not within a clause of an accident insurance policy exempting the company from liability for death from "taking poison," as such words mean the voluntary, intentional taking of poison, and do not include cases of accidental poisoning.

2. SAME—*policy construed against company in case of doubt.* If the words "taking poison," in an exemption from liability of an accident insurance company, may mean the accidental taking of poison, their meaning is doubtful and uncertain, and the language must be construed in favor of the insured, so as not to defeat his claim to indemnity.

3. SAME—*effect of including other causes of death, not accidental, in same clause with "taking poison."* The exception of "taking poison," in an

accident insurance policy, cannot be construed to mean the *accidental* taking of poison merely because it is contained in an accident policy, on the ground that if the cause of injury or death is not accidental it is manifestly not within the scope of the policy, where suicide and other causes of death and injury not accidental are embraced in the same exception.

4. SAME—*whole provision considered to determine what "taking poison" means.* The limitation of the term "taking poison," in an exception of an accident insurance policy, to the *intentional* taking of poison is not excluded because death so caused is covered by the clause relating to suicide, where the entire provision recognizes that death may result wholly or partly, directly or indirectly, from voluntarily taking poison without suicidal intent.*

*Travelers' Ins. Co.* v. *Dunlap,* 59 Ill. App. 515, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

The following is the statement of the case made in the Appellate Court:

"This was an action in assumpsit, by appellee, against appellant, upon a policy of accident insurance dated December 2, 1889, and issued by the appellant to William T. Dunlap. The declaration contains two counts, in the first of which the policy is set forth in full. The second count purports to give only the promissory effect of the policy. Three special pleas were filed to the second count, to which a general demurrer was sustained, and appellant elected to stand by the pleas. The case came on for trial before the court, without a jury, upon the first count, with the plea of non-assumpsit alone to the second count.

"The evidence tended to show that the deceased came to his death on June 14, 1890, as the result of taking, from his own hand, a considerable quantity of carbolic

---

*The question what constitutes an accident within the meaning of an accident insurance policy is discussed, with a review of the authorities, in a note to *Fidelity and Casualty Co.* v. *Johnson,* (Miss.) 30 L. R. A. 206.

acid in place of a medicine which he desired to take for sickness from which he was suffering at the time. He died within a few minutes after taking the fatal dose.

"The policy declared on insured William T. Dunlap for the term of twelve months, from noon of December 2, 1889, in the sum of $25 per week, 'against loss of time, not exceeding twenty-six consecutive weeks, resulting from bodily injuries effected during the term of this insurance, through external, violent and accidental means, which shall, independently of all other causes, immediately and wholly disable him from transacting any and every kind of business pertaining to his occupation; or, if death shall result from such injuries alone within ninety days, said company shall pay five thousand dollars ($5000) to M. J. Dunlap, if surviving, subject to the following conditions: Fourth, this insurance does not cover disappearances, nor suicide, sane or insane; nor injuries of which there is no visible mark upon the body; nor accident, nor death, nor loss of limb or of sight, nor disability resulting, wholly or partly, directly or indirectly, from any of the following causes or while so engaged or affected: disease or bodily infirmity; hernia, fits, vertigo, sleep-walking, medical or surgical treatment (amputations necessitated solely by injuries, and made within ninety days of the occurrence of the accident, excepted); intoxication or narcotics, taking poison, contact with poisonous substances; inhaling gas; sun-stroke or freezing; dueling or fighting; war or riot; violating law; violating rules of a corporation; internal injuries inflicted by the injured or any other person; voluntary over-exertion; wrestling, lifting, racing, gymnastics; voluntary exposure to unnecessary danger; enter or trying to enter a moving conveyance using steam as a motive power; riding in or on any such conveyance not provided for the transportation of passengers; walking or being on a railway bridge or road-bed (railway employees excepted).' "

C. C. BONNEY, and LYMAN M. PAINE, for appellant.

PECK, MILLER & STARR, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

It is settled by the judgments below that the death of the insured was caused by accident. Mistaking a bottle of carbolic acid for peppermint, which he wished to take for some ailment, he poured a portion of the acid into a glass of water, drank it, and died from the poison. The only question presented for our decision is, is the appellant exempted from liability on the ground that the insured died from "taking poison," within the meaning of the policy? Appellant contends that it is so exempt by the terms of the contract; that the term "taking poison," as used in the policy and according to its ordinary signification, includes accidental as well as intentional taking, and cites *Pollock* v. *United States Mutual Accident Ass.* 102 Pa. St. 230, which so holds. Appellee, however, contends, (and in this she is supported by the Appellate and circuit courts,) that the words "taking poison," as employed in the policy and in view of the rules of construction applied by the courts to such instruments, mean the voluntary, intentional taking of poison, and do not include cases of accidental poisoning; and counsel contend that this court has, in effect, so decided in *Healey* v. *Mutual Accident Ass.* 133 Ill. 556. While the precise point here at issue was not discussed in the opinion in the *Healey case*, yet it was involved in the decision, and is within the reasoning there employed. The leading cases on this subject were reviewed in the *Healey case*, including *Paul* v. *Travelers' Ins. Co.* 112 N. Y. 472, and *Pollock* v. *United States Mutual Accident Ass. supra*, and it was then said, (p. 564): "While we recognize the high ability of the court in which the case" (the Pennsylvania case) "was decided, we are not disposed to follow the rule there adopted. We think the rule established by the Court of Appeals

of New York one better calculated to carry out the true intention of the parties when the contract of insurance was entered into, and one, too, more nearly in harmony with the current of authority bearing on the question." See, also, *Pickett* v. *Pacific Mutual Life Ins. Co.* 144 Pa. St. 79; *Menneilly* v. *Employers' Liability Ass. Corp.* 43 N. E. Rep. (N.Y.) 54.

We are inclined to the opinion that the term "taking poison" would also, in common parlance, when used without any qualifying words, be understood to mean an intelligent and conscious act. If, in speaking of the cause of the death of another, we should say "he took poison," we would most commonly be understood to mean that his act in taking poison was intentional rather than accidental, and it would hardly be deemed necessary to say "he intentionally took poison," and if it were designed to avoid such understanding we would naturally say "he accidentally took poison," or would use some other qualifying words indicating that the act was accidental or its cause doubtful or unknown. It must, however, be conceded that the meaning of the term in the respect mentioned is not free from doubt. Able and learned arguments have been made on each side of the question by counsel, and cases are cited showing that courts of high authority do not agree on the subject. It would therefore seem to be eminently proper, in such a case, to apply the well-known rule of construction applicable to such instruments, that where there is doubt or uncertainty as to the meaning of the terms employed, the language, being that of the insurer, must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to indemnity, which, in making the insurance, it was his object to secure. *Niagara Fire Ins. Co.* v. *Scammon*, 100 Ill. 644; *Healey* v. *Mutual Accident Ass. supra;* May on Insurance, sec. 175.

Counsel for appellant insist that, using their own language, "an exception from an accident policy can only be

of some accident otherwise included within it, for if the cause of injury or death be not accidental, it is manifestly not within the scope of the policy at all. Hence, an exception of 'taking poison' means, *ex vi termini*, the exception of an accidental taking of poison." It is clear, however, that the so-called exception is something more than a mere exception excluding what would otherwise be included as accidents, for suicide by a sane person could not be said to be an accident, yet it, with other causes of death and injury not accidental, is embraced in the exception.

It is also said that the term "taking poison" cannot be limited in its meaning to the intentional taking of poison, for the reason that death so caused is covered by the clause relating to suicide, and to so construe it would give no force whatever to the words "taking poison." Counsel are mistaken also in this contention. When the entire provision in which these words occur is considered, it is too clear for argument that it is recognized that death may result wholly or partly, directly or indirectly, from voluntarily taking poison without any suicidal intent, and that death so caused, while excepted from the risks covered by the policy, would not be so excepted by the suicide clause. Besides, different kinds of accidents and injuries not resulting in death, caused by the voluntary taking of poison, might be excluded from such risks by this provision. It would not be difficult for the insurer to use language which, in respect to the question here under consideration, would be free from doubt. A policy of insurance should not be so framed as to be susceptible of one construction in the hands of the soliciting agent, and of quite a different one in the hands of the adjuster.

Finding no error in the record the judgment of the Appellate Court is affirmed.       *Judgment affirmed.*