THE TRAVELERS' INSURANCE COMPANY

*v.*

MARY A. AYERS.

*Opinion filed October 24, 1905.*

INSURANCE—*policy construed as to effect of death by inhaling gas accidentally escaping.* A provision of a policy that the insurance shall not cover death resulting wholly or partly, directly or indirectly, "from any gas or vapor," does not exempt the company from liability for death by asphyxiation caused by the accidental escape of gas into the room and the unconscious inhaling thereof while the deceased was asleep.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

HORTON & BROWN, for appellant.

JAMES JAY SHERIDAN, and MONROE FULKERSON, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This was a suit brought on an accident insurance policy which was issued on March 15, 1890, to John C. Ayers, husband of appellee. The trial resulted in a verdict in favor of

appellee for $4573.24, upon which judgment was entered, from which an appeal was prosecuted to the Appellate Court where the judgment of the lower court was affirmed, and a further appeal is prosecuted to this court to reverse the judgment of the Appellate Court.

The facts in the case are undisputed, and the record discloses that the insured, John C. Ayers, was in Richmond, Ind., and on Wednesday of the week of November 10, 1900, was assigned to a room in the Arnold Hotel, and on Saturday, November 10, about noon, was found dead, or breathing practically his last breath. The evidence discloses that at the time the insured was found there was a strong odor of gas in the room, and it appeared that prior to the Saturday morning the room had been lighted by natural gas and on that morning the natural gas was changed to artificial gas, and in doing so it was necessary to turn off the gas in the basement while making the change, and after the change was made the evidence discloses that the gas was again turned on. The evidence also discloses that the deceased usually left the gas burning when he retired for the night.

All premiums were paid at the time of the accident, and it is not contended that any of the conditions of the policy were not complied with by the insured. There can be no question but that the cause of his death was the inhaling of the gas, and the only question to be determined in this case is whether or not the provisions of the policy exempt the payment where the gas was involuntarily inhaled.

It is insisted by appellant that the provision of the policy, "this insurance shall not cover * * * death * * * resulting, wholly or partly, directly or indirectly, * * * from any gas or vapor," covers death by asphyxiation from gas, voluntary or involuntary, conscious or unconscious, and that the case is distinguished from the cases of *Healey* v. *Mutual Accident Ass.* 133 Ill. 556, *Travelers' Ins. Co.* v. *Dunlap,* 160 id. 642, *Metropolitan Accident Ass.* v. *Froiland,* 161 id. 30, and *Fidelity and Casualty Co.* v. *Water-*

*man,* 161 id. 632, which follow the case of *Paul* v. *Travelers' Ins. Co.* 113 N. Y. 472, wherein it is held that a clause in an accident insurance policy exempting the company from liability where the insured met his death from inhaling gas does not excuse the payment where such a death was due to gas breathed into the lungs in an unconscious and involuntary manner, and in discussing the question the court said: "But in expressing its intention not to be liable for death from 'inhaling of gas,' the company can only be understood to mean a voluntary and intelligent act by the insured, and not an involuntary and unconscious act. Read in that sense and in the light of the context these words must be interpreted as having reference to medical or surgical treatment, in which, *ex vi termini,* would be included the dentist's work, or to a suicidal purpose. Of course, the deceased must have, in a certain sense, inhaled gas; but in view of the finding that the death was caused by accidental means, the proper meaning of the word compels, as does the logic of the thing, the conclusion that there was not that voluntary or conscious act necessarily involved in the process of inhaling. An accident is the happening of an event without the aid and the design of the person and which is unforeseen. The finding itself defines the cause of death as the breathing of the atmosphere of the room full of illuminating gas. To inhale gas requires an act of volition on the person's part before the danger is incurred. Poison may be taken by mistake or poisonous substances may be inadvertently touched; but whatever the motive of the insured, his act precedes either fact."

In the case of *Metropolitan Accident Ass.* v. *Froiland, supra,* the contract contained the provision, "I agree that this insurance should not be held to extend * * * to poison in any way taken, administered, absorbed or inhaled." In discussing this case the court says (p. 36): "But it is insisted that the qualifying words 'in any way' have relation to the motive of the insured in taking the poison, and em-

brace his involuntary as well as his voluntary action in that regard. We are of the opinion that the words 'in any way' relate to the mode or manner in which the poison is taken, and not to the motive of the insured in taking it. Very nearly this precise question was so decided in *Connecticut Life Ins. Co.* v. *Akens,* 150 U. S. 468. It was there held, that in the phrase 'self-destruction in any form,' the words 'in any form' clearly related only to the manner of killing, and that the clause was by no means synonymous in meaning with such clauses as 'die by suicide, sane or insane,' or 'by suicide, felonious or otherwise, sane or insane.' In accordance with the ruling in *Dunlap's case* and in *Healey* v. *Mutual Accident Ass.* 133 Ill. 556, we must hold in the case at bar that the death of the member, Froiland, having been caused by accident, is not excluded from the risks covered by the contract of insurance sued on, by reason of the exception above mentioned. Insurance contracts are to be liberally construed, so as not to defeat the indemnity which, in making the contract, it was the object to secure, unless plainly necessary from the language of the contract."

*Fidelity and Casualty Co.* v. *Waterman, supra,* was a case where the intestate was asphyxiated by illuminating gas in the Northwestern Hotel, at Aurora, Ill., and it was proven that the fixtures in the room were defective. It was also proven that the deceased was intoxicated at the time of the accident. The terms of the policy were, "this insurance does not cover disappearances, nor war risks, nor voluntary exposure to unnecessary danger, nor injuries, fatal or otherwise, * * * received while or in consequence of having been under the influence of or affected by nor resulting, directly or indirectly, from intoxicants, anesthetics, narcotics, sunstroke, freezing, vertigo, sleep-walking, fits, hernia, or any disease or bodily infirmity." In discussing the terms of this contract the court reviewed the case of *Travelers' Ins. Co.* v. *Dunlap, supra,* and *Paul* v. *Travelers' Ins. Co. supra,* and adhered to the rule announced in those cases, and further

said (p. 635) : "That point, as we understand it, is, that the word 'inhaling' or 'inhalation' or 'inhaled,' as used in exceptions contained in these policies of life or accident insurance, implies a voluntary and intelligent act, as distinguished from an involuntary and unconscious act. Read in the light of the decisions, the words now in question do not mean otherwise than if they explicitly read, 'poison, or anything, accidentally or otherwise, consciously and by an act of volition, drawn into the system by inspiration.' This view is fully supported by a late decision of the Court of Appeals of New York. That court had before it, in *Menneilly* v. *Employers' Liability Ass. Corp.* 23 N. Y. Sup. 230, the case of a provision in an accident policy that it does not insure against death or disablement from anything accidentally inhaled. The insured had died at night of asphyxia, caused by involuntarily and accidentally breathing into his lungs, while asleep, illuminating gas which had accidentally escaped into his room at a hotel. It was held that the case was not distinguishable, in principle, from the *Paul case,* and that the provision in the policy did not relieve the insurer from liability. And we may add that this *Menneilly case,* which had then just been published, was cited by this court with approval in *Travelers' Ins. Co.* v. *Dunlap, supra.*"

We cannot agree with appellant's contention that the wording of its contract is broad and clear enough to make it distinguishable from the cases above cited. In cases where it has been held the company was not liable, the terms of the contract were clear and explicit and needed no construction. In the case of *Seitzinger* v. *Modern Woodmen,* 204 Ill. 58, the conditions were "suicide, sane or insane." This phrase is so simple that it does not merit construction, as any person that could read would readily grasp its meaning. It would be very little trouble for insurance companies to word their contracts so that all the terms and conditions could be easily understood, and no advantage could then be taken of any

one by reason that the terms were not known to the insurer. Such contracts as the one under consideration are gotten up solely by the company's officers, the insured having nothing whatever to say or any suggestions to make with reference to their terms. They are scarcely ever read by the applicant, and if they are read, the terms, as a usual thing, could not be readily understood, and the insured would be at the mercy of the agent of the company and must accept whatever interpretation he sees fit to put upon the contract. Such contracts have always been construed most strongly against the insurer. As was said in the case of *Travelers' Ins. Co.* v. *Dunlap*, 160 Ill. 642 : "It would not be difficult for the insurer to use language which, in respect to the question here under consideration, would be free from doubt. A policy of insurance should not be so framed as to be susceptible of one construction in the hands of the soliciting agent and of quite a different one in the hands of the adjuster."

The terms of the policies in the cases above cited are so similar to those in the policy in the case at bar, and what is said in the discussion of the conditions is so applicable to the conditions in this case, that we deem it unnecessary to extend the opinion in this case to any greater length. Suffice it to say that we adhere to what has heretofore been said in the cases above quoted from upon the conditions and terms of the policy, and are of the opinion that the court did not err in refusing the peremptory instruction, the refusal of which raises the only question urged in this court and is the only ground relied upon for reversal.

The judgment of the Appellate Court is therefore affirmed.                                    *Judgment affirmed.*