L. MYRTLE JONES, Appellant, v. HAWKEYE COMMERCIAL
MEN'S ASSOCIATION et al., Appellees.

INSURANCE:  Accident Insurance—Death by Gas—Exemption.  Exemption of liability for death "from gases * * * accidentally or

otherwise taken * * * or inhaled," embraces a death from gas, whether the gas was inhaled *voluntarily* or whether it was inhaled *involuntarily* and *unconsciously*.

WEAVER and SALINGER, JJ., dissent.

CONTRACTS: Construction—Arbitrarily Drafted Contracts. Principle recognized that, while arbitrarily drafted contracts, such as insurance policies, etc., will be construed most strongly against the one drafting the contract, yet such principle must not be carried to the extent of making a *new* contract for the parties.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

JULY 1, 1918.

REHEARING DENIED DECEMBER 14, 1918.

ACTION to recover benefits under an accident insurance certificate. The defense was that the death of the insured resulted from a cause which was excepted from the operation of the insurance certificate, in that the insured died from asphyxiation by gas. The trial court dismissed the petition, and the plaintiff appeals.—*Affirmed.*

*Stipp, Perry & Starzinger,* for appellant.

*Bradford & Johnson* and *Parsons & Mills,* for appellee.

EVANS, J.—The defendant is a mutual accident association. The deceased was concededly a member in good standing at the time of his death. The plaintiff was the beneficiary under the certificate. The death of the deceased resulted from asphyxiation from escaping gas in a hotel room wherein he slept. It was, therefore, presumably accidental. The insurance certificate specifically excepted from its operation death from certain specified causes, including the inhalation of gas. This particular exception was set forth in the insurance certificate as follows:

"That the association shall not be liable to any mem-

ber or beneficiary for any indemnity for accidental death
*  *  *  resulting *wholly* or *partially, directly or indirect-
ly,* from any of the following causes, conditions or acts or
when the member is under the influence of or affected by
any such cause, condition or act, to wit  *  *  *  from
*  *  *  *gases or anything accidentally or otherwise taken,*
administered,  absorbed,  injected,  inserted  or  inhaled
*  *  *  each of the foregoing causes, conditions or acts are
expressly excepted from all the provisions of these by-laws
granting to members or beneficiaries thereof, benefits or in-
demnities.    Provided, further, that the association shall
not be liable  *  *  *  for indemnity for any death, result-
ing wholly or in part *from*  *  *  *  *gases*  *  *  *  *ac-
cidentally or otherwise taken, administered, absorbed, in-
jected, inserted, or inhaled."*

The contention of the appellant is that the foregoing
provisions of the certificate should not be held to except
from its operation a case of accidental asphyxiation by gas,
but that the same were intended to cover only cases of in-
tentional inhalation of gas.    The following authorities are
cited in support of the contention:  *Paul v. Travelers' Ins.
Co.,* 112 N. Y. 472;  *Menneiley v. Employers' L. Ass. Corp.,*
148 N. Y. 596;  *Pickett v. Pacific M. L. Ins. Co.,* 144 Pa. St.
79;  *Fidelity & Cas. Co. v. Waterman,* 161 Ill. 632;  *Travel-
ers' Ins. Co. v. Ayers,* 217 Ill. 390;  *Fidelity & Cas. Co. v.
Lowenstein,* 38 C. C. A. 29.

Though some of these cases may be differentiated, in
some respects, from the case at bar, on the whole they fair-
ly sustain the appellant's argument, and we face the re-
sponsibility of agreeing or disagreeing with them.    We are
unable to yield our assent to the soundness of the reason-
ing put forth in the cited cases.    To our minds, it is a clear
and arbitrary contradiction of the very terms of the cer-
tificate, as above quoted.    We see no room for candid dis-

pute as to the meaning or construction of the terms used. If the language above quoted does not unequivocally, by its terms, except from the operation of the certificate accidents of this class, then we are unable to conceive of any language which could be used to such end. It is clearly true that all doubtful construction should be solved in favor of the insured, but such rule does not warrant an arbitrary judicial contradiction of the terms of the instrument. The right of the association to make such exception is not questioned, there being no legislative inhibition against it. As a matter of public policy, much could be said in favor of such legislative inhibition. But that question belongs to the legislative field, and does not come within the scope of judicial power. In the absence of inhibitive legislation, we are in duty bound to give effect to these exceptions as they are written. To say that the clause, "death resulting wholly or in part from gas accidentally or otherwise taken or inhaled," should be construed to mean, "gas accidentally *and voluntarily* inhaled," is not only a contradiction of the terms of the certificate, but is a self-contradiction. The exception covers the taking or inhalation of gas, "accidental or otherwise." The asphyxiation involved in this case was confessedly caused by the taking or inhalation of gas, accidentally "or otherwise." If this were an action upon a life insurance policy, a somewhat different question would be presented; but accident insurance only is involved. If the death did not result from accident, there was no liability. The presumption obtains in favor of the plaintiff that the taking was accidental. For the purpose of this case, then, it was accidental. If the gas was inhaled accidentally, it was not inhaled voluntarily. How, then, could the provision of the exception be construed to mean, "gas accidentally *and voluntari-*

2. CONTRACTS: construction: arbitrarily drafted contracts.

*ly* inhaled?" Such a construction simply inserts arbitrary contradiction into the plain terms of the exception.

The unsoundness of the holding was well set forth by Judge Sanborn, in his dissenting opinion in *Fidelity & Cas. Co. v. Lowenstein,* supra, as follows:

"I am unable to concur in the decision and opinion of the majority in this case. My mind will no more yield its assent to the proposition that an injury from poison involuntarily and unconsciously taken, or inhaled, is not included within the exception of 'injuries fatal or otherwise resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled' than it will to the mathematical proposition that two and two are five. The assent to either, and to one as much as to the other, brings to it a certain feeling of self-stultification, to which it will not subject itself. It seeks in vain for answers consistent with the former proposition, to the question: If gas is unintentionally and unconsciously taken or inhaled, why is it not 'accidentally' taken or inhaled? If it is not, then why is it not 'otherwise' taken or inhaled? And how can gas get into the system in any other way than by being 'accidentally or otherwise taken, administered, absorbed or inhaled?'"

We can conceive of no fair answer that can be made to the above reasoning.

To award recovery in this case would be to make arbitrarily a new contract between the parties. This is a mutual association. By the terms of its certificate, its members have clearly chosen not to insure each other against death from the cause here indicated. By these provisions, the insured was at all times protected against assessments for death from such cause. He had the full benefit of the exception during his lifetime. Why, therefore, should not his co-members continue to have the benefit of it, now as

well as hitherto? We think the trial court properly direct-
ed the verdict, and its order is—*Affirmed.*

PRESTON, C. J., LADD, GAYNOR, and STEVENS, JJ., concur.

WEAVER, J. (dissenting). The majority, while conced-
ing that the death of the insured was produced by an ac-
cidental cause, deny plaintiff the right to recover, on the
sole ground that the insurer is exempt from liability be-
cause of certain exceptions embodied in the contract of in-
surance. It is proper, therefore, at the outset, to look to
the law governing an exception in an insurance policy which
takes away or neutralizes a right of recovery which, but for
such clause, would be indisputable, under the general terms
of the contract. It is universally held (or perhaps I should
say it *was* the universal holding until the majority in this
case said otherwise) that, a policy of insurance being
framed in language chosen by the insurer, every exception
and condition embodied therein to relieve it from liability is
to be given the construction most favorable to the insured.
The precedents to this effect are too numerous and too fa-
miliar to call for citation; but see authorities collated in
*Goodwin v. Provident Sav. L. Ass. Assn.,* 97 Iowa 233;
also, *Burkhard v. Travelers' Ins. Co.,* 102 Pa. St. 262. For
illustration of the application of this rule to fact condi-
tions, I call attention to the following: Not infrequently,
accident policies provide exception from liability if death
or injury is caused by voluntary exposure to danger; but
this is construed by the courts to mean, not a voluntary act,
in the ordinary sense, but an act done intentionally, know-
ing the risk, and recklessly taking the chances. It has also
been held that such an exception does not include a case
where the insured is injured or loses his life in attempting
to save the life of another, even though he acts with knowl-
edge of the danger to himself. *Keene v. New England Mut.
Acc. Assn.,* 161 Mass. 149; *Da Rin v. Casualty Co.,* 41 Mont.
175; *Tucker v. Mutual Ben. L. Co.,* 50 Hun (N. Y.) 50 (af-

firmed 121 N. Y. 718); *DeLoy v. Travelers' Ins. Co.,* 171
Pa. St. 1 (50 Am. St. 787); 1 Labatt on Master & Servant
(1st Ed.), Section 360; Thompson on Negligence (2d Ed.),
5435; 1 C. J. 447. A provision against liability where death
has been caused wholly or in part by a surgical operation
or treatment, does not apply where such operation or treat-
ment is reasonably necessary. *Westmoreland v. Preferred
Acc. Ins. Co.,* 75 Fed. 244; *Vernon v. Iowa St. Trav. Men's
Assn.,* 158 Iowa 597, 607; *Travelers' Ins. Co. v. Murray,* 16
Colo. 296. An exception against death by suicide or from
self-inflicted injuries does not relieve the insurer from lia-
bility for death of the insured by his own hand or act
while temporarily insane. *Accident Ins. Co. v. Crandal,*
120 U. S. 527 (30 L. Ed. 740); *Blackstone v. Standard L. &
Acc. Ins. Co.,* 74 Mich. 592, 614. So, also, an exception
against liability for injuries from "unnecessary exposure"
to danger will not prevent recovery for an injury received
in sport or play. *Cornwell v. Fraternal Acc. Assn.,* 6 N. D.
201. Nor does an exception of death or injury "by the hand
of the insured" exclude a right of recovery where the self-
injury is unintentional. *Northwestern Mut. L. Ins. Co. v.
Hazelett,* 105 Ind. 212, 213; *Mutual Ben. L. Ins. Co. v.
Daviess' Exr.,* 87 Ky. 541; *Healey v. Mutual Acc. Assn.,* 133
Ill. 556. Nor does a limitation of liability to cases where
the injury is occasioned by external and violent means ex-
clude such right where death results from poison, drown-
ing, or asphyxiation. And yet none of these decisions could
be logically upheld or defended, if tested by the narrow
and rigid rule to which the majority opinion subjects the
contract in this case. Fortunately, we are not without
many and eminent authorities upon the precise question
with which we have here to deal. The exception of liability
where death or injury has been caused by "poison or gases
or anything accidentally or otherwise taken, administered,
absorbed, injected, inserted, or inhaled" (or other words of

the same general effect), is one of frequent occurrence in accident policies; and the meaning and effect of such provision has been considered and determined in many cases. *Paul v. Travelers' Ins. Co.*, 112 N. Y. 472 (20 N. E. 347) ; *Menneiley v. Employers' L. Ass. Corp.*, 148 N. Y. 596; *Pickett v. Pacific M. L. Ins. Co.*, 144 Pa. St. 79 (22 Atl. 871) ; *Travelers' Ins. Co. v. Ayers*, 217 Ill. 390 (75 N. E. 506) ; *Fidelity & Cas. Co. v. Waterman*, 161 Ill. 632; *Travelers' Ins. Co. v. Dunlap*, 160 Ill. 642 (43 N. E. 765) ; *Metropolitan Acc. Assn. v. Froiland*, 161 Ill. 30 (43 N. E. 766) ; *Mutual Acc. Assn. v. Tuggle*, 39 Ill. App. 509; *Dezell v. Fidelity & Cas. Co.*, 176 Mo. 253 (75 S. W. 1102) ; *McMillen v. Elder*, 155 Mo. App. 662 (135 S. W. 496) ; *Miller v. Fidelity & Cas. Co.*, 97 Fed. 836; *Beile v. Travelers P. Assn.*, 155 Mo. App. 629; *United States Mut. Acc. Assn. v. Newman*, 84 Va. 52; *Lowenstein v. Fidelity & Cas. Co.*, 88 Fed. 474; *Fidelity & Cas. Co. v. Lowenstein*, 97 Fed. 17; *Dent v. Railway Mail Assn.*, 183 Fed. 840; 1 Corpus Juris 454; 4 Cooley's Briefs 3196; 1 Cyc. 263. Each of these numerous cases was based upon a policy of accident insurance; in each, death had been caused by asphyxiation or by poison; and in each, the policy contained an exception or condition against liability by the insurer for death "resulting from poison, poisonous substances or anything accidentally or otherwise administered, absorbed or inhaled," or other words of the same general import. In every one of these cases, representing the views of different state courts of last resort, the United States Circuit Court, and the Circuit Court of Appeals, the plaintiff has been allowed to recover. No case from any court of higher or equal authority is cited by counsel or by the majority in this case, holding to the contrary. Indeed, the majority concedes that these precedents do "fairly sustain the plaintiff's argument," and points to no authority whatever in support of its own conclusion, except the dogmatic expression of one judge in

a dissenting opinion in an intermediate court. On this frail foundation, the majority proceeds to brush aside all the precedents standing in the way of the desired result, by denouncing them as "arbitrary," and declaring that there is "no room for candid dispute" over the correctness of the defendant's interpretation of the insurance contract. Were the charge of arbitrary and uncandid expression of opinion directed alone to the writer of this dissent, he would bow to the rebuke with becoming meekness; but he begs leave to suggest that for this court, without the support of a single authoritative precedent, to thus stigmatize the ability, candor, and fairness of the courts of New York, Pennsylvania, Illinois, and Missouri, and other tribunals whose recognized standing and reputation are guaranties of their competence to interpret contracts and recognize and properly apply legal principles, partakes, to say the least, of rashness which ought to be avoided, and, indeed, ought to convince us of the wisdom and propriety of a re-examination of this case, to discover whether, after all, the failure of judicial vision is not due to the beam in the eye of this court. Were there any substantial conflict of view of courts which have so frequently considered this question, the position taken by the majority would appear less rash; but there is none. With one minor exception, the courts which have had occasion to pass upon it are unanimous in sustaining the principle announced in the *Paul* case. That there may be no mistake about what the authorities held, or about their application to the facts in the instant case, I beg leave to make a more particular statement concerning some of these precedents.

In the *Paul* case, as in this, the insured died by suffocation from gas in his sleeping room at a hotel. There was no evidence tending to show that the death was suicidal. The policy sued upon provided certain exceptions to the liability of the insurer, and among these was enumerated "death or disability which may have been caused by the tak-

ing of poison, contact with poisonous substances, or the inhaling of gas." The insurer defended on the ground that, because of this exception, there could be no recovery on the policy. But the court, in overruling the defense, said:

"In expressing its intention not to be liable for death from 'inhaling of gas,' the company can only be understood to mean a voluntary and intelligent act, and not an involuntary and unconscious act. * * * To inhale gas requires an act of volition on the person's part, before the danger is incurred. Poison may be taken by mistake, or poisonous substances may be inadvertently touched; but whatever the motive of the insured, his act precedes either fact. * * * If the exception is to cover all cases where death is caused by the presence of gas, there would be no reason for using the word 'inhale.' If the policy had said that it was not to extend to any death caused wholly or in part by gas, it would have expressed exactly what appellant now says was meant by the present phrase, and there could have been no room for doubt or mistake. Policies of insurance are to be liberally construed; and, as in all contracts, conditions are to be construed strictly against those for whose benefit they are reserved."

In the *Menneiley* case, the insured was found dead under very similar circumstances, and the insurer relied upon an exception in the policy which provided for non-liability for death from anything accidentally taken, administered, or inhaled, or from inhaling gas. The trial court held that this exception was more inclusive than the one considered in the *Paul* case, and sustained the defense. On appeal, the ruling was reversed, and the insurer held liable, reaffirming the construction which that decision placed upon the words, "inhaling gas." To counsel's contention that the added words, "anything accidentally taken, administered, or inhaled," required a different construction, the court said:

"We think otherwise. That provision in the policy

clearly implies voluntary action on the part of the insured
or some other person. The insured must take or inhale, or
another must administer.   *   *   *   We think that the par-
ticular accidents intended to be excepted by that provision
are the accidental taking or inhaling into the system of
some injurious or destructive agency under the mistaken be-
lief that it was beneficial, or at least harmless."

In the *Pickett* case, decided by the Pennsylvania court,
the insured descended into a well to repair a pump, and was
suffocated by gas accumulated there. The exception in the
policy   on   which   the   insurer   resisted   payment   was
to the effect that the insurance did not cover a case of death
"from or attributable partially or wholly to inhalation of
gas." The court there reviews the New York cases direct-
ly in point, and other insurance cases involving analogous
questions, and sustained a recovery.

*Fidelity & Cas. Co. v. Waterman,* 161 Ill. 632, is an-
other case of suffocation by gas. There, the policy, in list-
ing exceptions to the insurer's liability, included "injuries
fatal or otherwise from poison or anything accidentally or
otherwise taken, administered, absorbed, or inhaled;" and
here, the rule of the cases above cited is approved and fol-
lowed. In *Froiland's* case, 161 Ill. 30, the insured died from
taking chloral by mistake for distilled water. The excep-
tion from the insurance was of death by poison "in any way
taken, administered, absorbed or inhaled." Much dependence
was there placed by the insurer upon the clause "in any way
taken;" but it was held that this clause had reference to the
manner or mode in which the poison is taken, and not to the
motive of the insured in taking it. A very similar rule is
applied in *Connecticut Mut. L. Ins. Co. v. Akens,* 150 U. S.
468, where it was held that the words "self-destruction in any
form" were not synonymous with "suicide, sane or insane."
In the *Ayers* case, the court had again to deal with a case of
asphyxiation by gas, and an exception in an accident insur-

ance policy fully as broad as the one in the instant case; and the rule of the *Paul, Menneiley,* and *Pickett* cases' was again approved. The decision of the United States Supreme Court in *Accident Ins. Co. v. Crandal,* 120· U. S. 527, though arising upon a different state of facts, is quite in point in principle. There, the policy provided that the insurer should not be liable because of self-inflicted injuries by the insured. He killed himself, while insane. Had that court adopted the theory of the majority opinion in this case, it would have pointed out the language of the exception, and held that, as the provision against liability for self-inflicted injuries is clear and explicit, and as death by suicide is a self-inflicted injury, there could be no recovery. On the contrary, it held, as did the courts of New York, Pennsylvania, Illinois, Missouri, and Virginia, that the reference in the policy to self-inflicted injuries must be interpreted as having reference to injuries so inflicted while the insured was sane, and capable of knowing and appreciating the nature of his act. Will the majority say that the court in that case arbitrarily disregarded the contract, or arbitrarily made a new contract for the parties? I take it for granted that the majority will not commit itself to such a holding; but it will require some very agile readjustment of its logic to enable it to say that, in the one case, the voluntary and intelligent act of a sane man is required, while in the other, it is not.

Without tracing further the individual cases upon this point, there is still another aspect of the question which is entitled to consideration, and this has reference to the rule which the majority concedes: that, if there be any doubt of the proper construction of the language of the policy, that doubt is to be solved in favor of the policy holder. Whether any doubt exists, requiring an application of this principle, is not to be determined simply by the way the question, as an original proposition, appeals to the minds of this court.

It may seem perfectly clear to us, or to a majority of our members; but if the courts of last resort in several different jurisdictions have ruled otherwise, and especially if such holding has been practically unanimous, wherever such cases have been considered, the very least we can do is to say that such conflict between ourselves and other courts of equal rank and authority leaves the construction in such doubt as to require the application of the rule. Such was the view taken by the United States Circuit Court of Appeals of this district in the *Lowenstein* case, supra, where it is said that, when the insurance in that case was issued, the company must have known that:

"As interpreted by the courts of last resort in several states, the policy as drawn would not exempt it from liability if a poisonous gas was unconsciously, involuntarily, and accidentally inhaled by the insured, which occasioned his death or injury. It had knowledge, therefore, that, by reason of such adjudications, its policies, if it continued to issue them in the old form, would, in all probability, be accepted by some, and possibly many persons, upon the understanding that the company intended to, and did in fact, assume the species of risk last described. If such was not its intention, its plain duty was to so modify the language of its policies as to make its purpose clear, inasmuch as a slight change in the phraseology theretofore employed would have left no room for doubt or speculation as to its meaning. We are unwilling to concede that an insurance company may continue to issue policies without modification of their terms, after certain provisions thereof have been construed by several courts of the highest character and ability, and be heard to insist, in controversies between itself and the insured, with respect to such subsequently issued policies, that they do not, in fact, cover risks that they had been judicially adjudged to cover, before they were issued. While it may not be accurate to say that, under such cir-

cumstances, a technical estoppel arises in favor of the insured, yet the courts in such cases should rigidly enforce the rule requiring policies of insurance to be construed most strongly against the insurer, and they should not hesitate to hold that decisions construing a policy adversely to the contention of the insurer thereafter create a doubt as to its proper interpretation, of sufficient gravity to be resolved in favor of the insured."

For another illustration of this rule, see *Davis & R. B. & M. Co. v. Jones,* 14 C. C. A. 30. Indeed, even without any precedent to appeal to, it would seem evident to reasonable and fair-minded persons that a proposition upon which courts of reputable standing fail to agree, is one which neither of them is entitled to declare free from all doubt.

I further beg leave to say that the reasoning by which the majority endeavors to justify its radical departure from the admitted rule of the precedents is not only illogical and mistaken, but, as I shall soon demonstrate, is also wholly inconsistent with the unanimous holding of this court in a very recent case.

Preliminary to this appeal to our own precedents, I may say that the many cases I have already cited are united in pointing out and emphasizing the fact that, if the insurer, in framing its policy, intended to relieve itself from all liability for death from poison or gas, and desired the person receiving such policy to so understand it, it was an easy thing for it to so do, in terms wholly free from possible doubt. If the policy had said that the insurance thereby provided should not extend to or include any injury or death from poison or gas, which is what the insurer now argues, no one could well misunderstand it. But instead of so doing, it avoids any such clear and comprehensive stipulation, and restricts its exception to cases of injury or death from poison "taken" or "administered," or from gas "inhaled," which is a very different proposition. But, says the

majority, in effect, this policy provides against liability for injury or death from poison or gas in any way taken or administered or inhaled, accidentally or otherwise, and to construe it as meaning death from an accidental, but voluntary, taking of poison, or voluntary inhaling of gas, is a "self-contradiction," an "arbitrary distinction," where none exists, and, if the gas is inhaled accidentally, it cannot possibly be said to have been inhaled voluntarily. But this is a palpable mistake. It certainly is not correct that a "taking" of poison or "inhaling" of gas may not be at once both voluntary and accidental. Though it may be true that the word "voluntary" is often used in a sense which excludes the idea of an accident, yet this is not always the case; and both words may properly be employed to characterize the same act. The physical act may be voluntary; yet if, owing to facts or conditions unknown to the insured, such act is productive of injury to himself, then such voluntary act is also, in a very just sense of the word, accidental. This truth is very well put by the Pennsylvania court, in *Burkhard v. Travelers' Ins. Co.*, 102 Pa. St. 262. In that case, the insured left the car in which he was riding, and, in descending from the platform to a bridge on which the train was standing, fell through an opening, and was killed. The insurer sought to escape liability by pleading an exception in the policy. Discussing the facts, the court says:

"It is true he voluntarily left the car; but a clear distinction exists between a voluntary act and a voluntary exposure to danger. * * * The act may be voluntary, and the exposure involuntary. The danger being unknown, the injury is accidental."

There is still another allowable view which is equally decisive against the appellee's contention herein. An act may be neither voluntary nor involuntary; and injury from such act is not included in an exception which mentions only acts which are voluntary or involuntary. For the purpose of

this case, it makes little difference whether we treat the exception as applying only to the conscious, voluntary, and intelligent taking of poison and inhaling of gas by a sane person, or whether, the insured being suffocated in his sleep, without consciousness of his peril, and without contributing thereto by any act of his own, either voluntary or involuntary, it may be said to be outside of the scope of the exception. Approaching the facts from either angle, it is very clear that the demurrer to the petition was improperly sustained.

I conclude this dissent by recalling to the mind of the court the case of *Riley v. Interstate B. M. Acc. Assn.*, 177 Iowa 449, in which some of the vital features are identical with those in this case. There, it will be remembered, the insured, being indisposed, consulted a physician, who gave him a medicine which proved to be poisonous, and caused his death. His policy provided that the insurer should not be liable for the death of the insured resulting from the voluntary or involuntary taking of poison. Suit being brought, the insurer, adopting the philosophy and reasoning of the majority in this case, demurred to the petition, saying, in substance: "The insured took the poison; and, as his taking must have been either voluntary or involuntary, the petition discloses no cause of action." At the outset, this court adopted that theory, and affirmed the ruling of the trial court in sustaining the defendant's demurrer. A rehearing was granted; and, on further argument, we all united in ordering a reversal. The opinion was written by a distinguished jurist, who excels in keen and incisive criticism and exposition of the meaning and effect of language; and with a brief reference to the views there expressed, I am done. After citing the language of the exception in the policy, and noting the allegation of the petition that the taking of the poison was neither voluntary nor involuntary, but accidental, the opinion proceeds:

*"The words that single out the voluntary or involuntary
taking of poison were put into the contract by defendant,
and it must be assumed that they were intended to be ef-
fective, and to state the exemptions of defendant to the
uttermost extent intended. Therefore, they cannot mean
that the naked fact of death by poison absolves from liabili-
ty. It must have been intended that there could be some ·
deaths from poison for which defendant is liable.* Had it
been the intention that the mere fact that the death was due
to poison defeated recovery, a statement that defendant was
not liable if death so resulted would have been plenary, and
would have covered any death from poison, no matter how
caused."

The italics are my own, and I use them to mark the sin-
gular and apt adaptation of the words to the case now un-
der consideration. It happily illustrates the rule—very fre-
quently overlooked—that, in stating a proposition or a
simple contract obligation, the shortest and simplest form
of expression is the strongest which can be used. There are
many, however, who proceed on the theory that, if they ex-
pand the brief, unmodified statement, by adding thereto
various expressions of an adjective or adverbial character,
they are increasing its scope, emphasis, and binding force,
when, in fact, in almost every instance, every such addition
serves only to narrow and restrict the meaning and effect
which the principal sentence would have had without them.
This, the writer of that opinion points out clearly, when he
says that, had it been intended to exclude all liability for
death by poison, a simple statement to that effect would
have been all that was needed; but when the insurer pro-
ceeded to modify the statement, by adding "voluntary or
involuntary," it so narrowed its exception as to exclude
therefrom all other deaths from poison. Applying that rule
to this case, which, like the *Riley* case, comes to us from a
ruling on demurrer to plaintiff's petition, we cannot con-

sistently avoid a reversal. No member of the court dissented in the final opinion in the *Riley* case, which, I assume, had passed from their minds; but now that I have quoted themselves to themselves, I trust they will at once recognize the controlling character of the authority, and be ready to join in holding that the judgment below ought to be reversed.

SALINGER, J., concurs in this dissent.