## John W. Hutton, Appellee, v. States Accident Insurance Company, Appellant.

INSURANCE, § 415*—*when injury while fighting covered by accident policy.* The breaking of the leg of insured while engaged in a fight in which he began the assault is caused by "accidental means," within the terms of an accident policy insuring against injuries "effected exclusively by external, violent and accidental means" where the injury is an unusual and unexpected result of the fight.

Appeal from the Circuit Court of Jasper county; the Hon. ALBERT M. ROSE, Judge, presiding.  Heard in this court at the October term, 1913.  Affirmed.  Opinion filed May 1, 1914.

FITHIAN & KASSERMAN, for appellant; McKENZIE CLELAND, of counsel.

WRIGHT BROS. & DENTON, for appellee.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

---

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

On October 27, 1911, appellant issued to appellee a policy of accident insurance which insured against injuries, "Effected exclusively by external, violent and accidental means." The facts, about which there is but little controversy, are that appellee and a man by the name of Huddleston, prior to the evening of November 9, 1911, had a difficulty or misunderstanding of some character, and that on said night Hutton walked into a restaurant at Newton at about the hour of six o'clock and that Huddleston was then sitting at a lunch counter eating his supper. Without saying a word to anybody, appellee walked up behind Huddleston and struck him a violent blow on the head, intending to disable him. Huddleston immediately got upon his feet and a fight ensued in which appellee fell or was thrown on the floor, and, as some of the witnesses claim, Huddleston fell against him or on him and in some manner, not appearing very clearly from the evidence just how, appellee's leg was broken. There was evidence showing that appellee also injured his finger in some manner and that immediately after the fight he was using his knife to remove a piece of broken skin. There was some evidence tending to show that during the fight Huddleston's clothes were cut but appellee says that he took his knife out of his pocket, after he fell, and cut the skin off of his finger, and other witnesses say that appellee did not have or use a knife. There was also some evidence tending to show that appellee was under the influence of liquor but this was not very clearly proved, and denied by appellee. Defendant rested its case upon the proposition that the injury was not caused by "accidental means," inasmuch as the plaintiff had voluntarily engaged in the fight and also that he was then under the influence of liquor, injuries thus received being excepted in the policy. A plea of general issue and some additional pleas were filed but the case was tried and submitted by the defense upon the two propositions

above suggested. The jury returned a verdict for five hundred dollars, upon which judgment was rendered. The appellee sought to recover from the appellant on account of the injuries sustained by him in the breaking of his leg. Appellant insists and argues that this injury was not "effected exclusively by external violent and accidental means." That the appellee deliberately and intentionally assaulted Huddleston, and that said assault, with the consequent fight, were the means through which plaintiff's injuries were inflicted, that such were therefore not in any sense of the word accidental.

There seems to be much conflict of authority as to what constitutes "accidental means." Many courts hold that where the injury results from an act intentionally done by the assured that it does not come within the terms of the policy, and many cases referred to by counsel for appellant have fairly announced this doctrine, but in some of the cases the decision turned upon a limiting clause contained within the policy but no such clause appears in the policy in question in this suit. It is also true that some of the cases referred to have given this construction to the word "accidental means" upon a clause similar to that contained in this policy, but we are inclined to think that the class of cases referred to are not in exact harmony with the decisions of the Supreme Court of Illinois upon some of the principles announced; notably, the case of *Westmoreland v. Preferred Acc. Ins. Co.*, 75 Fed. 244. The death of the insured was caused by the voluntary administration of chloroform, and it was held that the result, while unexpected and in that sense accidental, was not caused by accidental means. In *Healey v. Mutual Acc. Ass'n*, 133 Ill. 556, the court held that the accidental drinking of poison, where it is not shown to have been done with the attempt to take the life, is within the terms of the policy, and that where death ensued it would be construed to have been

received by or through "external," violent and "accidental means," within the spirit and meaning of an insurance policy. It is also said in this case that the policy should be construed most favorable for the assured in case of doubt or uncertainty in its terms, and should be construed so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to secure. In the case last above referred to a line of authorities were cited giving a stricter construction to the terms of the policy and holding injuries of that character were not within the terms of the policy, but in commenting upon these authorities our Supreme Court says: "But while we recognize the high ability of the court in which the case was decided, we are not disposed to follow the rule there adopted." Other cases cited by counsel for appellant are *Southard v. Railway Passengers' Assur. Co.*, 34 Conn. 574, the assured jumped off a car and sustained hernia, for which he claims indemnity, but the court held that while the result was not expected, yet the plaintiff had intended to jump off of the car and therefore the means were not accidental. In *McCarthy v. Travelers' Ins. Co.*, 8 Biss. 362, the insured while exercising with Indian clubs ruptured a blood vessel, and it was held such injury was not caused by accidental means. Also the case of *Carnes v. Iowa State Traveling Men's Ass'n*, 106 Iowa 281, the assured intentionally took morphine tablets, not with suicidal intent; death resulted, however, unexpectedly. *Held,* that the means were not accidental. And in the case of *Feder v. Iowa State Traveling Men's Ass'n* 107 Iowa 538, death resulted from rupture of artery from attempting to close window shutter. *Held,* not due to an accidental cause; and many other cases of like character are cited by counsel for appellant. We are not inclined to adopt the view as set forth in these cases as they do not give the policy a liberal construction in favor of the insured, and, as we view it, are entirely too narrow.

In defining "accident" some of the authors of the leading law dictionaries say: "Death by accident means death from any unexpected event which happens as by chance, or which does not take place according to the usual course of things;" Anderson. "An unusual or unexpected event;" Abbott. "An unforeseen danger occurring without the will or design of the person whose mere act causes it; an unexpected, unusual or undesigned occurrence;" Black. "An event which under the circumstances is unusual and unexpected by the person to whom it happens;" Bouviere. We think the doctrine laid down in the case of *Lovelace v. Travelers' Protective Ass'n of America,* 126 Mo. 104, 30 L. R. A. 209, is the more reasonable, gives a broader construction to the language of the policy and comes more nearly conforming to the intentions of the parties in entering into the contract. In this case it is held that the mere fact that Lovelace engaged in or brought on a fight in the manner described did not of itself indicate that he sought death or had reason to expect it as a consequence of his action; but it is said that the principle laid down here should not control because Lovelace did not know that the man he assailed was armed and therefore could not expect the fight to result in his death. This is probably true, that he did not expect such a result to occur; and we can see no difference in principle whether the unexpected result was the loss of an arm, death or a broken limb, if it was in fact an unusual and unexpected result. The gist is that the result was unusual and unexpected. In this same case the court further says, in quoting from the case of *Schneider v. Provident Life Ins. Co.,* 24 Wis. 28: "There is nothing in the definition of the word 'accident' that excludes the negligence of the injured party as one of the elements contributing to produce the result.  *  *  *  An accident may happen from an unknown cause; but it is not essential that the cause should be unknown. It may be an unusual result of a known cause, and there-

fore unexpected by the party. And such was the case here, conceding that the negligence of the deceased was the cause of the accident.'' In the case of *United States Mut. Acc. Ass'n v. Barry,* 131 U. S. 100, three men jumped from the platform of a car, two of them alighted without injury; the other, observing that his comrades had alighted in safety and feeling that he was incurring no risk in doing what the others had done without injury, also jumped and received an injury from which he died. *Held,* death was by accident. The injury which resulted to him was unforeseen and unexpected and therefore accidental. The trial judge in instructing the jury in this case said: ''Of course it is to be presumed that he expected to reach the ground safely and without injury. Now, to simplify the question and apply to its consideration a common-sense rule, did anything, by chance, or not as expected, happen, in the act of jumping or striking the ground, which caused an accident? This, I think, is the test by which you should be governed, in determining whether the alleged injury, if any was sustained, was or was not effected through accidental means.'' This instruction was approved by the Supreme Court of the United States. Many other cases might be cited in support of this view of the question under consideration. The Editor, in a very learned note, in the case of *Fidelity & Casualty Co. of New York v. Carroll,* 5 L. R. A. (N. S.) 657, comments very fully upon the result of an unlawful act where there was an unusual and unexpected result and says: ''On the other hand, if the assured's act was attended with an unexpected and unusual result, —one which could not have been reasonably anticipated, and which he did not intend to produce; that is, was not the natural or probable consequence of his act; and was not the result of design, but was produced unexpectedly and by chance,—the injury was caused by accidental means within the meaning of policies of accident insurance. See 4 Cooley, Briefs on Ins. pp. 3156-3160; Elliott, Ins., §§ 391, 392; 3 Joyce, Ins., § 2863.'' The in-

struction given upon behalf of the plaintiff, to which appellant excepts, is almost in the exact language of the Editor's note above referred to. The instruction seems to us to have been proper and that it was a question of fact for the jury to determine, under all the facts and circumstances proved in the case, whether or not the result produced by the assault of appellee was unexpected and unusual.

An insurance policy is the product of the insurer, and where matters arise, like the question in controversy in this case, where there might be some doubt as to the liability, then the insurer in preparing his policy should use such language as would exclude any such doubts. Indeed, it appears from many of the cases referred to that policies have contained clauses protecting the Insurance Company from any liability growing out of a fight or other unlawful act. If the appellant really intended by its policy to relieve itself from any liability from unlawful or negligent acts resulting in unusual or unexpected events, then it should have so stated in its policy, but it did not. The question of intoxication of appellee was also one of fact, and it is not even contended strenuously that the evidence does show intoxication, at least the jury found against appellant also upon this proposition, as the jury were instructed that if he was intoxicated at the time he could not recover.

The objections urged to appellant's refused instructions and appellee's given instructions are fully covered by the principles laid down in the foregoing opinion. We are unable to see that the court materially erred in the refusing and giving of the respective instructions of appellant and appellee.

We are of opinion that even though appellee began the assault, yet if thereafter in the progress of the fight an incident occurred which produced an unusual and unexpected result, as the jury found did occur in this case, then under the terms of this policy we believe that the jury were warranted in finding the appellant liable.

There does not appear to us to be any reversible error in the trial of this case, and the judgment of the lower court is affirmed.

*Judgment affirmed.*