SECOND DISTRICT—OCTOBER, 1919.    341

Sutter v. Massachusetts Bond. and Ins. Co., 215 Ill. App. 341.

# Lydia Dorothea Sutter, Appellee, v. Massachusetts Bonding and Insurance Company, Appellant.

## Gen. No. 6,690.

1. INSURANCE, § 667*—*when finding that ptomaine poison was in food eaten by insured is warranted by evidence.* In an action to recover on an accident insurance policy, where the evidence shows that insured died of cerebral hemorrhage after suffering 19 days from an attack of ptomaine poisoning immediately following the eating of a lunch in a cafeteria, a finding that the ptomaine poison was in the food is warranted notwithstanding the general statement of an expert witness for defendant that ptomaine poisoning may develop from a diseased condition or from the arousing of bacteria in the body by taking healthful food, there being no evidence to show that these were the conditions.

2. INSURANCE, § 686*—*when cause of death of insured is question for jury.* Where the expert evidence is conflicting in an action on an accident insurance policy, as to whether the cerebral hemorrhage and death of insured, who died of cerebral hemorrhage after being sick for 19 days with ptomaine poisoning, resulted from such poisoning and sickness, the question is for the jury.

3. EVIDENCE, § 454*—*how jury are to weigh expert medical testimony when conflicting.* Where expert medical testimony is conflicting, it is the duty of the jury to weigh it in the light of their knowledge and judgment derived from their experience, observation and reflection.

4. INSURANCE, § 419*—*death by unintentional swallowing of poison contained in food as caused by "accidental means."* Death caused from the unintentional swallowing of poison contained in apparently wholesome food may be considered caused by "accidental means," within the meaning of an accident insurance policy.

5. INSURANCE, § 419*—*when ptomaine poisoning not excluded from accident policy.* The fact that an accident insurance policy contains a special provision that blood poisoning resulting directly from bodily injury insured against shall be deemed bodily injury within the meaning of the policy does not tend to exclude a construction of the policy to include ptomaine poisoning.

6. INSURANCE, § 690*—*when instructions not misleading.* Instructions in an action to recover on an accident insurance policy *held*, when read together and applied to the evidence, not to be misleading.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Sutter v. Massachusetts Bond. and Ins. Co., 215 Ill. App. 341.

7. INSURANCE, § 408*—*accidental character of means causing death of insured in accident policy as question of construction of contract.* In an action on an accident insurance policy, whether the means causing the death of insured was accidental was a question of construction of the contract.

8. INSURANCE, § 697*—*when refusal of instruction in action on accident policy is not error.* In an action on an accident insurance policy, it is not error to refuse to give, at defendant's request, an instruction that if insured, on a certain date, contracted ptomaine poisoning, that of itself was not proof that it was contracted through accidental means, directly and independently of all other causes, where there is no question in the case as to how the poisoning was contracted, the accidental character of the means had been argued and decided as a question of law and whether it was independently of all other causes had been covered in other instructions given.

Appeal from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding. Heard in this court at the April term, 1919. Affirmed. Opinion filed October 14, 1919. *Certiorari* denied by Supreme Court (making opinion final).

EDWARD W. RAWLINS and CHARLES H. KING, for appellant.

WILKERSON, CASSELS & POTTER and LESLIE P. HANNA, for appellee; RALPH F. POTTER, of counsel.

MR. JUSTICE CARNES delivered the opinion of the court.

This is an appeal by the defendant insurance company from a judgment on a verdict of $8,397.60 in favor of appellee, Lydia Dorothea Sutter, the beneficiary named in an accident insurance policy issued November 2, 1915, to John H. Sutter, her husband, insuring against "bodily injury sustained directly and independently of all other causes through accidental means." The insured died June 21, 1915, after suffering 19 days from an attack of ptomaine or food poisoning immediately following his eating a lunch in a cafeteria. The immediate cause of his death was

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

cerebral hemorrhage or apoplexy. He was about 39 years old, and prior to said sickness was in good health, active and robust. Appellee claims (1) that deceased unintentionally swallowed poison contained in the apparently wholesome food eaten at said lunch; (2) that the poison occasioned the violent sickness of the succeeding 19 days; (3) that the poison and the resulting sickness weakened the blood vessels of the brain and was the direct cause of the apoplexy and death; and (4) that the bodily injury sustained by the unintentional swallowing of the poison contained in apparently wholesome food is, within the meaning of the policy, an injury sustained by accidental means.

Appellant claims (1) that the proof does not show that poison was swallowed in the food so taken; (2) that the 19 days' sickness was not occasioned by so taking poison into the system; (3) that, even assuming the poisoning and sickness, it did not result and could not have resulted in the apoplexy and death; (4) that ptomaine poisoning is not a bodily injury within the meaning of the insurance contract, but is a disease or sickness which may be unintentionally contracted, like typhoid fever, scarlet fever, influenza, and other diseases caused by unintentionally getting in contact with germs.

Except some criticism as to instructions given and refused, the controversy involves only the questions presented in the above noted conflicting claims.

On the first question the evidence is uncontradicted that ptomaine poisoning immediately followed the eating of the lunch. The condition was one usually caused by poison contained in food. The only doubt suggested rests on the general statement of one of appellant's expert witnesses that ptomaine poisoning may develop from a diseased condition, or from bacteria within the body aroused by taking normal, healthful food, with no evidence showing, or tending

344, APPELLATE COURTS OF ILLINOIS.

Sutter v. Massachusetts Bond. and Ins. Co., 215 Ill. App. 341.

to show, that it did so occur in this case. We think the jury were warranted in finding that the poison was in the food.

On the second question there is no conflict of testimony—no doubt that the 19 days' sickness was caused by ptomaine poisoning occurring immediately after eating the food.

On the third question, whether the poisoning and consequent sickness caused the apoplexy and death, there is a sharp conflict of expert testimony. The symptoms of the sickness were violent intestinal derangement, headaches, delirium, cold sweats, physical collapse, and other symptoms indicating general poisoning. They were violent for the first week; afterwards there were indications of mental disturbance, and the insured did not leave the second floor of his house. On the day of his death he awoke in the morning in a disturbed mental condition; went to the bathroom, came back to his room, sat in a chair for a short time, then went to bed showing symptoms of exhaustion. About the middle of the forenoon he became completely paralyzed, and died about 4 o'clock in the afternoon. His attending physician testified that in his opinion the cerebral hemorrhage was caused by weakened condition of the blood vessels, a direct result of the ptomaine poisoning. An expert of standing in the medical profession testified in answer to a hypothetical question, based on the facts stated by the attending physician, that in his opinion the death was brought about by weakening of the walls of the blood vessels by the action of the toxins from the food poisoning setting up an irritation in the membranes of the arteries and blood vessels, and a local irritation in the brain resulting in increased heart action and blood pressure, which, accompanied by the weakening of the blood vessels, caused the bursting of the vessel in the brain. A toxicologist of much experience testified that ptomaine poisoning might af-

fect the tissues of the membranes of the brain. Three apparently competent expert physicians called by appellant each testified that assuming the facts as stated by the attending physician, he was of the opinion that ptomaine poisoning did not cause the death, and that ptomaine poisoning could not in the period of 19 days weaken the blood vessels so there would be cerebral hemorrhage from blood pressure. Thus arose a question of fact that could not be answered from the common knowledge of mankind. It was the duty of the jury to weigh the conflicting medical testimony in the light of their knowledge and judgment derived from their experience, observation and reflection. (*Springfield Consol. Ry. Co. v. Hoeffner,* 175 Ill. 634, 642.) They were presumed to make use of their common knowledge. They are supposed to represent the average intelligence of the community in which they live. Their opinion of the weight and credibility of the conflicting evidence must prevail, unless manifestly wrong. Had any one of the twelve jurors special knowledge and education qualifying him as an expert witness, he should not have injected that special knowledge into the consideration and discussion of the case with his fellow jurors. (*Ottawa Gas Light & Coke Co. v. Graham,* 28 Ill. 73; 38 Cyc. 1836; 31 L. R. A. 490, note.) It is not a scientific question settled like the law of gravity, of which the court takes judicial notice. So far as this record discloses, it is one of dispute among apparently qualified experts. The subject of disease, its cause and remedy, is one on which intelligent men radically differ. Any judge may have positive convictions on questions so arising, but even were he qualified to testify as an expert, we suppose it would be his duty in passing on the evidence in any given case on a motion for a new trial to accept the verdict of the jury if he believed it was not manifestly against the weight of the evidence, when considered by men possessing only the common experience and knowl-

346    Appellate Courts of Illinois.

Sutter v. Massachusetts Bond. and Ins. Co., 215 Ill. App. 341.

edge of mankind. There are no doubt theories of sickness and death so revolting to common sense that they should be rejected even when supported by testimony; but whether ptomaine poisoning might weaken the blood vessels and cause apoplexy is not in that class of questions, and we conclude the trial judge did not err in accepting that finding of the jury. This poisoning, sickness and death of an apparently healthy man, all within 19 days, leads a layman to conclude it was a case of cause and effect. One of appellant's expert witnesses said it had that appearance. The court did not err in refusing to direct a verdict for appellant, and another trial would probably result in the same finding by the jury. We are not inclined to reverse the judgment on that ground.

Appellant's fourth contention is supported by some authority outside of this State resting on the theory that the producing cause of the injury was the eating of the food, which was intentional; that the insured did what he intended to do when he ate the food in question. It was the result only that was unexpected and unintended; that there must be some element of unexpectedness in the preceding act or occurrence which leads to the injury or death to bring the case within the phrase "accidental means." We think the decided weight of authority is against this position. Our Supreme Court in *Healey v. Mutual Accident Ass'n,* 133 Ill. 556, held that death caused by accidentally taking poison is produced by "external, violent, and accidental means"; and in *Travelers' Ins. Co. v. Dunlap,* 160 Ill. 642, drinking carbolic acid by mistake for peppermint was recognized as an accident within the meaning of the policy. In *Higgins v. Midland Casualty Co.,* 281 Ill. 431, a case of sunstroke, it was argued by the insurance company that the sunstroke was suffered when and while the insured was doing just what he intended to do, and in the way he intended to do it, and therefore the injury

was not sustained through accidental means. That position was not sustained by the court. See also *Metropolitan Accident Ass'n v. Froiland*, 161 Ill. 30, and *Hutton v. States Accident Ins. Co.*, 186 Ill. App. 499.

The Supreme Court of Indiana in the recent case of *United States Casualty Co. v. Griffis*, 186 Ind. 126, 114 N. E. 83, had the precise question under consideration, death there resulting from ptomaine poisoning in eating mushrooms supposed to be edible, and concluded that the death was from accidental means and not from disease, citing a great number of authorities. The Supreme Court of Michigan in *Johnson v. Fidelity & Casualty Co. of New York*, 184 Mich. 406, 151 N. W. 593, L. R. A. 1916A 475, held that death by ptomaine poisoning due to partaking of tainted food through mistake is within the terms of a policy insuring against death by accident. The L. R. A. editor says in a note that that conclusion appears to be sound and to be supported by other decisions, which he cites. We see no reason why death caused from the unintentional swallowing of poison contained in apparently wholesome food should not be considered caused by accidental means. Many accidents occur when the victim is doing precisely what he intends to do. He may step on a plank supposing it is safe, when in fact it is decayed and will not support him; or drive an automobile presuming its machinery is in good order and be thrown out because the brake will not work; or drink out of a bottle presuming it to contain a harmless fluid, when in fact it is a deadly poison. We do not see how these cases can be distinguished from eating food that he presumes wholesome, but which, in fact, contains a poison. In each case he is, in a sense, injured when and while he is doing what he intended to do.

It is not claimed there is any provision in the contract restricting the meaning of the phrase "acci-

dental injury" except counsel say a special provision in the policy that blood poisoning resulting directly from bodily injury insured against shall be deemed bodily injury within the meaning of the policy tends to exclude a construction embracing ptomaine poisoning. This special clause in the policy seems meaningless. There is no doubt that blood poisoning resulting, as there stated, is within the other provisions of insurance. (*Central Accident Ins. Co. v. Rembe,* 220 Ill. 151.) A special unnecessary provision that an accidental injury to the arm should be held within the terms of the policy would not tend to exclude a claim that an accidental injury to the leg was within its general terms. We conclude that appellant's fourth contention should be denied.

The court instructed the jury for the plaintiff if the insured during the period covered by the policy took into his body a poisonous substance with food which he ate supposing it to be nonpoisonous, and that his death was caused thereby directly, or through a chain of circumstances or results caused by such poison so taken into his body independently of all other causes, the plaintiff is entitled to recover; and even though they might believe the death of the insured was directly caused by bodily infirmity or disease, if they further believed from the evidence that such bodily infirmity or disease was directly and independently of all other causes 'caused by the accidental taking into the body of the poisonous substance, that fact that such bodily infirmity or disease was the immediate cause of the death did not prevent a recovery. Appellant's objection to these instructions is that they authorize a recovery for death resulting from a poison that might not have been taken into the body with the food in question, but at some former time, and the death might not have occurred within 90 days (the time limit in the policy) from the time the poison was taken. The jury were instructed at

the instance of appellant that the burden was on the plaintiff to show "that this bodily injury, if any, though accidentally caused, was the sole cause of death; that if the insured at the time he received the injury in question was suffering from a pre-existing disease which contributed to cause death, there could be no recovery, and if he was suffering at the time from some disease or ailment which combined with the injury to cause death, there could be no recovery." Those instructions read together and applied to the evidence could not have misled the jury. There was no evidence of poison taken into the system at any other time than that claimed by the plaintiff. The jury's attention was directed solely to the eating of the food in question as the source of the poisoning. There was only the suggestion of a possibility that such cases might result from a previous poisoning becoming active through the eating of wholesome food. That was testified to merely as a theory by the expert. There was no proof, or attempt to prove, anything of the kind existed in this case. The court refused to instruct for appellant that if the deceased on June 2, 1916, contracted ptomaine poisoning that of itself was not proof that it was contracted through accidental means directly and independently of all other causes. There was no error in refusing that instruction. If the insured contracted ptomaine poisoning June 2, 1916, which the instruction assumes, there is no question of how it was contracted. Whether the means should be held accidental was a question of construction of the contract that is argued and decided as a question of law; whether it was independently of all other causes was properly submitted under other instructions given.

Finding no reversible error, the judgment is affirmed.

*Affirmed.*