THE METROPOLITAN ACCIDENT ASSOCIATION

*v.*

MYRTLE FROILAND.

*Filed at Ottawa March 28, 1896.*

1. INSURANCE—*construction of an exception in policy as to death by poison.* Death caused by poison, accidentally taken by mistake for distilled water, is not within an exception of a policy of accident insurance excluding liability for death by "poison in any way taken, administered, absorbed or inhaled."

2. SAME—*what amounts to waiver of proofs of death.* Information to the beneficiary of a policy, given at the office of the secretary and general manager on a request for forms to make proofs of death, that the officers know of the death, but that it is of no use to make proofs for the reason that the death was caused by poison and is not covered by the policy, is a waiver of such proofs.

3. SAME—*what will waive by-law limiting time of bringing actions.* Refusal of permission to inspect the by-laws of an insurance association on request made at the office of the secretary and general manager, and a misstatement as to the time within which suit may be brought, constitute a waiver of a by-law on that subject, and in such case the rule charging the member with notice of the by-law does not apply.

4. APPEALS AND ERRORS—*effect of joining issue after overruling of demurrer.* Joining issue on pleadings to which demurrers have been overruled waives any error in the ruling on the demurrers.

5. SAME—*judgment in excess of ad damnum—when not reversed.* Rendering judgment for damages in excess of the *ad damnum* of the declaration is not ground for reversal, where the excess is merely for interest accrued pending the suit, and the objection thereto is first made on appeal.

*Metropolitan Accident Ass.* v. *Froiland,* 59 Ill. App. 522, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

Appellee brought suit in the circuit court of Cook county on a certificate of membership issued by appellant, a mutual benefit association, to Herman Martin Froiland, the husband of appellee. The member, Froiland, died from poison which he drank by accident. Intending to drink distilled water, by mistake he drank chloral instead. His written application for the certificate contained the following: "I agree that this insurance shall not be held to extend  *  *  *  to poison in any way taken, administered, absorbed or inhaled." Also: "I agree that any failure on the part of myself, my heirs, legal representatives or beneficiaries, to comply with the terms, provisions, conditions and limitations of the by-laws, (as they now exist or may hereafter be amended by the members of the association,)  *  * . *  shall work a forfeiture of my membership." The certificate issued on the application provided for the payment, in case of the death of the member through external, violent and purely accidental means, of $5000 to the plaintiff within ninety

days of the receipt of satisfactory proofs of death. The certificate contained also the following provisions: "An immediate written notice by the member or his representative, to the association in Chicago, stating time, place and manner and nature of injury, and the certificate of a surgeon who has examined said injury as soon as his services could be secured, are conditions precedent to recovery, unless compliance therewith is impossible. In such event said notice to be given as soon as possible." "The consideration for this insurance is and shall be the warranties and agreements contained in the application herefor, which, with the by-laws of the association now in force or hereafter enacted by the members of the association, are made a part hereof, and the payment, when due, of the various calls which may have been made hereon." The by-laws provided, among other things, as follows:

"12. (*a*) The certificates of this association shall provide against all forms of bodily injuries induced by external, violent and accidental means, except as follows: (*b*) The benefits under the certificate of this association shall not extend to any case in which there shall be no external or visible signs of bodily injury, nor to death or disability happening, directly or indirectly, in consequence of disease or bodily infirmity, hernia, orchitis, or taking of poison or contact with poisonous substances, or inhaling gas, or by any surgical operation, * * * suicide (sane or insane.) * * * The benefits shall not be held to extend to mysterious disappearances, or to any case of death or disability the nature, cause or manner of which is unknown or incapable of direct and positive proof.

"19. (*b*) *Fatal injury*—In case of immediately fatal injury, notice of the accident must be furnished without unnecessary delay, and unless direct and affirmative affidavits, proving the date, place, cause, manner of death, also location and occupation of deceased at time of in-

jury, shall be furnished to this association within three months of the date of said death, all claims under such certificate shall be waived and forfeited to the association.

"22. *Suits*—(*a*) No suit shall be commenced or maintained against this association unless the same shall be commenced within thirty days from and after the date of the refusal of the association to entertain a claim or pay an award. The failure of the association to pay a claim within sixty days from the date of filing with the association of proofs thereof shall be construed by the member as a refusal on the part of the association to pay said claim, and no suit or proceeding at law shall be brought by said member, his heirs, executors, administrators or assigns, unless the same shall be commenced within thirty days from the expiration of the said sixty days hereinbefore mentioned."

The member, Froiland, died on the 27th day of February, within a few hours after the accident, and was at the time in good standing in the association. No written notice of the alleged accident was ever given by the plaintiff to the defendant, nor was any certificate of any attending surgeon or physician furnished to the defendant, nor were any proofs of loss filed with the defendant. On the 21st or 22d day of March, 1893, the plaintiff, with her attorney, went to the office of the defendant, and they were then and there notified that the defendant would not pay the claim and refused to entertain it. The plaintiff began this action on the 5th day of May, 1893. Her declaration sets forth the certificate and the portion of the application which has been quoted above; alleges that the deceased died from the effect of poison taken by him accidentally and in place and instead of distilled water, but says that he did not die from "poison in any way taken, administered, absorbed or inhaled, within the meaning of said words as used in his said application for membership;" alleges the waiving by the

161—3

defendant of any proof of death of Froiland, and that she, the plaintiff, "has observed and kept all things in the said policy of insurance contained on her part to be kept and performed." To this declaration pleas were filed, consisting, first, of the general issue, and second, of a special plea that the suit was not begun within thirty days from the refusal of the defendant to entertain the plaintiff's claim. To this special plea the plaintiff replied, first, that there was no such by-law limiting the time within which to bring suit; second, that she was prevented by fraud and false representations of the defendant from bringing her action within the time provided by the by-law. To the last special replication the defendant demurred, but the court overruled the demurrer and issue was joined. A jury was waived and the court found the issues for the plaintiff and gave judgment for the amount designated in the certificate, with interest and costs. On appeal the judgment was affirmed in the Appellate Court, and the defendant appealed to this court.

SMITH, SHEDD & UNDERWOOD, for appellant:

Where the contract relieves the insurer from liability for poison taken, administered, absorbed or inhaled, the plaintiff cannot recover upon allegations and proof of the accidental taking of poison. *Pollock* v. *Accident Ass.* 102 Pa. St. 230; *Cole* v. *Accident Ins. Co.* 61 L. T. R. 227; *Hill* v. *Accident Ins. Co.* 29 Hun, 187; *Richardson* v. *Insurance Co.* 46 Fed. Rep. 843.

The by-laws of a mutual benefit association are equally binding upon all the members, who are conclusively presumed to know the provisions thereof. The rights of the beneficiary under the certificate of such an association are no greater than those of the member. *Insurance Co.* v. *Foote,* 79 Ill. 361; *Benefit Ass.* v. *Spies,* 114 id. 463; Biddle on Insurance, sec. 52; 2 Am. & Eng. Ency. of Law, 710; *Bauer* v. *Samson Lodge,* 102 Ind. 262; *Coles* v. *Iowa State Mutual,*

18 Iowa, 425 ; *Manning* v. *San Antonio Club*, 63 Tex. 166 ;
*St. Mary's Society* v. *Burford's Admr.* 70 Pa. St. 321 ; *People*
v. *Board of Trade*, 45 Ill. 112; Boisot on By-laws, sec. 75,
and cases cited.

The application is also part of the contract.  *Aid Ass.*
v. *Hand*, 29 Ill. App. 73.

The beneficiary takes the benefits of the contract, if
at all, *cum onere*, and stands certainly in no better posi-
tion than the insured with reference to the by-laws and
all other provisions of the contract.  *Gray* v. *Supreme
Lodge*, 118 Ind. 293.

It is lawful for the parties to an insurance contract to
fix upon any limitation of time they can agree upon for
the bringing of suit after a claim has accrued.  Such con-
tracts are valid, and violate no principle of public policy
or law, and are to be enforced by the courts.  *Insurance
Co.* v. *Whitehill*, 25 Ill. 382; *Amesbury* v. *Insurance Co.* 6 Gray,
603; Biddle on Insurance, sec. 1323; *Johnson* v. *Insurance
Co.* 91 Ill. 92.

JAMES SMITH, and C. S. DARROW, for appellee:

It seems to us that the law in this case has been ex-
pressly decided by the Supreme Court of this State in
*Healey* v. *Accident Ass.* 133 Ill. 556.  That case expressly
approves *Paul* v. *Insurance Co.* 112 N. Y. 472, and expressly
disapproves and refuses to follow *Hill* v. *Accident Ins. Co.*
29 Hun, 187, and *Pollock* v. *Accident Ass.* 102 Pa. St. 230.

Policies which provide that there shall be no liability
in cases of suicide are not held to cover cases where
suicide was the result of insanity.  *Insurance Co.* v. *Akens*,
150 U. S. 468; *Keils* v. *Reserve Fund Ass.* 29 Fed. Rep. 198;
*Crandol* v. *Accident Ins. Co.* 27 id. 40.

Where an exception was made for liability for death
caused by hernia, it was held such exception did not
relate to hernia produced by accidental causes.  *Insurance
Co.* v. *Murray*, 26 Pac. Rep. 774.

By pleading over to the declaration after demurrer overruled, the demurrer is waived. *Shreffler* v. *Nadelhoffer*, 133 Ill. 548; *Railway Co.* v. *Leah*, 41 Ill. App. 587; *Coal Co.* v. *Glass*, 34 id. 366; *Folts* v. *Hardin*, 38 id. 549; *Railroad Co.* v. *Sampson*, 31 id. 516; *School Directors* v. *Kimmel*, 34 id. 542.

Neither the person becoming a member of an association nor the beneficiary is necessarily and absolutely chargeable with notice, and bound by all the by-laws, irrespective of actual knowledge. Beach on Insurance, 536; *Miller* v. *Insurance Ass.* 44 N. J. Eq. 224; *Davison* v. *Benefit Society*, 59 Minn. 303; *Doane* v. *Mutual M. and L. Co.* 45 N. J. Eq. 234.

Mr. JUSTICE CARTER delivered the opinion of the court:

The principal question in this case is like the one involved in *Travelers' Ins. Co.* v. *Dunlap*, 160 Ill. 642, and it must be controlled by that decision. Instead of using the term "taking poison," which in that case, as used in the policy, we held to mean the voluntary taking of poison, the application in the case at bar, which was made a part of the insurance contract, contained this provision: "I agree that this insurance shall not be held to extend * * * to poison in any way taken, administered, absorbed or inhaled." The principal contention of appellant is, that although it is shown, and not disputed, that the death of the member was caused by poison accidentally taken,—chloral taken by mistake for distilled water,—yet there can be no recovery, because the term "poison in any way taken" must be held to include poison taken accidentally as well as poison taken intentionally. It is not contended that there is any difference, as a cause of death, between the term "poison taken" and the term "taking poison." Indeed, the by-laws use the one term and the application uses the other. But it is insisted that the qualifying words, "in any way," have relation to the motive of the insured in taking the poison, and embrace his involuntary as well

as his voluntary action in that regard. We are of the opinion that the words "in any way" relate to the mode or manner in which the poison is taken, and not to the motive of the insured in taking it. Very nearly this precise question was so decided in *Connecticut Life Ins. Co.* v. *Akens*, 150 U. S. 468. It was there held, that in the phrase "self-destruction in any form" the words "in any form" clearly related only to the manner of killing, and that the clause was by no means synonymous in meaning with such clauses as "die by suicide, sane or insane," or "by suicide, felonious or otherwise, sane or insane." In accordance with the ruling in *Dunlap's case* and in *Healey* v. *Mutual Accident Ass.* 133 Ill. 556, we must hold in the case at bar that the death of the member, Froiland, having been caused by accident, is not excluded from the risks covered by the contract of insurance sued on, by reason of the exception above mentioned. Insurance contracts are to be liberally construed, so as not to defeat the indemnity which, in making the contract, it was the object to secure, unless plainly necessary from the language of the contract.

It is also contended by appellant that there should have been no recovery by appellee, under the issues and proofs, because, first, immediate notice of the member's death was not given to appellant as required by the certificate of membership; and second, the suit was not begun within thirty days after the refusal by appellant to entertain or to pay the claim. It is very doubtful whether the notice required by the certificate to be given immediately upon the happening of the injury applies to cases of death. When construed in connection with the by-laws it would seem to apply only to injuries not fatal. But however this may be, the notice, if any was required, was waived, as were also the proofs of death and the by-law requiring suit to be brought within thirty days. The member died on February 27, and on the 22d day of March appellee and her attorney went to the office of the

secretary and general manager of the association and asked him for forms upon which to make proper proofs of death, but the secretary told them, in substance, that the officers of the association knew of the member's death; that it would be of no use to make the proofs, for the reason that Froiland's death was caused by poison; that the insurance did not cover such a case, and that the claim would not be paid. It must also be taken as established by the judgments of the circuit and Appellate Courts, that appellee, as a matter of fact, had no knowledge of the provision in the by-laws requiring suits, if brought at all, to be brought within thirty days after the refusal of the association to entertain or pay the claim, and that for the purpose of ascertaining what, if any, limitation as to time was provided in the by-laws, appellee and her attorney asked appellant's secretary, at the time and place above mentioned, for a copy of its by-laws, and when this request was refused, then inquired of him how much time appellee had in which to bring suit, and was informed that she had three months. This officer of the association was then in possession of the by-laws and had printed copies of them, and whether or not appellee had a right to obtain from the association a copy of such by-laws, she had the right to inspect them and to be informed of their contents. The secretary and manager then knew, from the conversation, that she was ignorant of the by-law requiring suit to be brought within thirty days. Whether, as matter of law, she was charged with knowledge of the by-laws or not, she was in fact ignorant of the one in question, as was then well known to this officer of the association. While there is some conflict as to what was said, it must be taken, on this appeal, as established that she was, in effect, refused permission to inspect the by-laws, and was misled and induced to believe that she had three months in which to bring suit. However unreasonable a by-law requiring suit to be begun within thirty days from the time of the

refusal by the company to pay might appear to be, we do not deem it necessary to pass upon that question; but that this by-law was waived by the wrongful acts of appellant's secretary and manager we have no doubt. It is a familiar rule that refusal to pay a claim on the ground that the loss is not one covered by the policy is a waiver of the requirement usually contained in the policy that the prescribed proofs of the loss be furnished to the company, and that in such case suit may be maintained without furnishing such proofs. Upon the same principle we see no reason why the finding for the plaintiff of the issue made on the second replication setting up the facts above stated did not, in effect, amount to a finding that the by-law in question was waived by the association. (See *Allemania Fire Ins. Co.* v. *Peck*, 133 Ill. 220, and cases there cited.) When the issue on this replication is considered, we do not think the court erred in refusing to hold as law in the decision of the case the proposition submitted by appellant that appellee was charged with notice of and was bound by the by-laws, and that it was immaterial whether she had actual knowledge of them or not.

Counsel for appellant contend that the court erred in not sustaining their demurrers, first, to the declaration, and next, to the replication. If any error was committed in this regard it was waived by pleading over. The record shows that issues were joined on the pleadings to which demurrers had been overruled.

It is also assigned for error, and insisted on here, that the damages assessed exceed the *ad damnum* of the declaration, and that the judgment should be reversed for that reason. It seems that the excess of the judgment over the damages claimed in the declaration was the interest allowed which accrued after the commencement of the suit. At the conclusion of the trial the court found the issues for the plaintiff and assessed her damages at $5354, which was $354 in excess of the amount claimed in the

declaration. The defendant entered its motions for a new trial and in arrest of judgment, which motions, as entered, were overruled by the court and exceptions taken by the defendant. Exceptions were also taken to the findings of the court and to the judgment. The specific objection was not made, nor was the court's attention called to the fact, that the damages assessed exceeded the *ad damnum* of the declaration. Had this been done the court would, no doubt, have limited the judgment to the amount claimed or would have allowed the plaintiff to amend her declaration. It is undoubtedly true that it was error to render judgment in excess of the amount claimed in the declaration. It has been uniformly so held by this court. But the error was a formal and technical one, that should have been pointed out to the court by the defendant below when making its objections and taking its exceptions to the action of the court. This was not done, and the error was therefore waived. This view is in substantial accord with the decision of this court in *Utter* v. *Jaffray*, 114 Ill. 470, where, although no motion for a new trial or in arrest of judgment was made and no exceptions were taken to the judgment, it was said that had any such action been taken, "stating that the finding of the damages was in excess of the *ad damnum* in the amended declaration, the error could have been, and no doubt would have been, corrected at once, under the statute, on such terms as the court might have deemed equitable and just." The inference to be drawn from the language used in that case is, that such an error will be waived unless the specific objection be made in the trial court. See, also, *Bowden* v. *Bowden*, 75 Ill. 111.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*