No. 20,593.

BERTHA MINNER, *Appellant*, V. THE GREAT WESTERN
ACCIDENT ASSOCIATION, *Appellee*.

SYLLABUS BY THE COURT.

INSURANCE—*Accident and Sickness Indemnity—Death from Breathing Gas—Policy Construed*. An accident insurance policy provided for two kinds of indemnity, accident indemnity and sickness indemnity. Sickness indemnity was payable only in the event of disability for a period of seven days or more. Disability occasioned by gas was classified as sickness, the provision of the policy relating to the subject reading as follows:

"Disability or loss, fatal or otherwise, caused by or resulting wholly or in part, directly or indirectly from . . . gas, . . . in any manner taken or administered, voluntarily or involuntarily, . . . shall be classified as sickness and shall be subject to the provisions, conditions and limitations governing sickness insurance as herein set forth, the original cause of such disability notwithstanding."

It is held that no recovery could be had for the death of the insured on September 20, caused by accidentally and unintentionally breathing illuminating gas which accidentally escaped into his sleeping room on the night of September 19 and the morning of September 20.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed January 6, 1917. Affirmed.

*John W. Adams*, and *George W. Adams*, both of Wichita, for the appellant.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey*, all of Wichita, *George H. Carr, Fred P. Carr*, and *Donald Evans*, all of Des Moines, Iowa, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on an accident insurance policy. A demurrer was sustained to the petition and the plaintiff appeals.

The policy was issued to E. W. Spidal, who died on September 20, 1913. The petition alleged that his death was caused by accidentally and unintentionally breathing illuminating gas, which accidentally escaped into his sleeping room in the night of September 19 and the morning of September 20. A

copy of the policy was attached to the petition.  The policy provided for two kinds of indemnity, accident indemnity and sickness indemnity.  Sickness indemnity was payable only in the event of disability for a period of seven days or more.  Disability occasioned by gas was classified as sickness, the provision of the policy relating to the subject reading as follows:

"Disability or loss, fatal or otherwise, caused by or resulting wholly or in part, directly or indirectly, from . . . gas, . . . in any manner taken or administered, voluntarily or involuntarily, . . . shall be classified as sickness and shall be subject to the provisions, conditions and limitations governing sickness insurance as herein set forth, the original cause of such disability notwithstanding."

There can be no doubt that the words, "in any manner taken, . . . voluntarily or involuntarily," cover the accidental breathing of gas while asleep.  The word "take" is properly used in the passive sense of "receive," as, "this paper takes ink readily," and is used specifically in the sense of to receive into the body or system, both voluntarily and involuntarily, as, "to take food," "to take disease."  (Webster's New International Dictionary, title "take.")   Besides this, application of the word "taken" is amplified by words universally inclusive.  The supplying of gas to the insured for medical, surgical, or other beneficial or remedial purpose, is expressly covered by the word "administered."  Every thinkable way of taking is covered by the words, "in any manner."  Respiration being one manner of taking, is necessarily included.  The attitude of the insured toward the taking is covered by the words, "voluntarily or involuntarily."  These words include taking consciously and willingly while awake, and taking unconsciously, without act of volition or intelligence, by accident or otherwise, while asleep.

The plaintiff relies on the cases of *Paul v. Travelers' Ins. Co.,* 112 N. Y. 472, and *Menneiley v. Employers' Liability Assur. Co.,* 148 N. Y. 596, and on decisions of courts of other states which have followed the New York decisions.  In the Paul case the policy provided that insurance should not extend to "inhaling of gas."  The court held that this referred to inhalation by voluntary and intelligent act of the assured.  In the Menneiley case the doctrine of the Paul case was adhered to.  The syllabus reads as follows:

"The exception, in an accident insurance policy, of death or disable-

ment 'arising from anything accidentally taken, administered or inhaled, contact of poisonous substances, inhaling gas, or any surgical operation or exhaustion consequent thereon,' does not exempt the insurer from liability where the death of the insured is caused by his involuntarily and accidentally breathing illuminating gas which had accidentally escaped into the room where he was sleeping at the time of his death.

"The words, 'inhaling gas,' in the above connection, refer to a voluntary, intelligent and conscious act on the part of the insured, and also have reference to medical or surgical treatment, or suicidal purpose.

"The words, 'anything accidentally taken, administered or inhaled,' in the above connection, apply only to cases where something has been voluntarily and intentionally, although mistakenly, taken, administered or inhaled, and do not exempt the insurer from liability for death caused by. involuntarily and accidentally breathing escaped illuminating gas." (Syl. ¶¶ 1-3.)

In the case of *Fidelity and Casualty Co. v. Waterman*, 161 Ill. 632, the syllabus reads as follows:

"Death from asphyxiation by illuminating gas while the assured was asleep is not within a clause of an accident insurance policy providing that the insurance does not cover 'injuries, fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled.'

"The words, 'absorbed or inhaled,' in a clause of an accident insurance policy providing that such policy does not cover injuries from anything accidentally or otherwise absorbed or inhaled, imply a voluntary and intelligent act as distinguished from an involuntary and unconscious act." (Syl. ¶¶ 1, 3.)

In the opinion, the New York cases were cited, and the court said:

"The claim made is not well grounded, if the correctness of the point decided in the cases we have mentioned be conceded. That point, as we understand it, is, that the word 'inhaling' or 'inhalation' or 'inhaled,' as used in exceptions contained in these policies of life or accident insurance, implies a voluntary and intelligent act, as distinguished from an involuntary and unconscious act. Read in the light of the decisions, the words now in question do not mean otherwise than if they explicitly read, 'poison or anything accidentally or otherwise, consciously and by an act of volition, drawn into the system by inspiration.'" (p. 635.)

In the opinion in the case of *McGlother v. Provident Mut. Acc. Co.*, 89 Fed. 685, the United States court of appeals for this circuit commented on the New York and Illinois decisions as follows:

"We must not be understood, however, to adopt or approve those

decisions. The path they follow is so narrow, tortuous, and indistinct that we should hesitate long to follow it. Starting in the *Paul* case with the thought that the word 'inhaling' implies a conscious act, and invoking the much-abused rule that every policy of insurance of doubtful meaning should be construed most strongly against the company, it reaches the interesting conclusion in the *Fidelity and Casualty Company*. case that a death from accidentally inhaling' gas while sleeping is not a death 'resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled' under an exception in the policy in those words. If gas is unintentionally and unconsciously taken or inhaled, why is it not 'accidentally' taken or inhaled? If it is not, then why is it not 'otherwise' taken or inhaled? And how can gas get into the system in any other way than by being 'accidentally or otherwise taken, administered, absorbed or inhaled?' In the *Fidelity and Casualty Company* case the court interprets the exception of death 'resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled' to mean death resulting from 'poison or anything accidentally or otherwise, consciously and by an act of volition, drawn into the system by inspiration,' and then holds that the death there in question did not result from gas inhaled 'consciously and by an act of volition,' and therefore was not within the exception. But the parties who made the contract did not restrict their exception to death from anything taken or inhaled 'consciously and by an act of volition,' but expressly extended it over death from 'anything accidentally or otherwise taken or inhaled.' The construction given by the court to this clause of the policy appears to be cunning and astute to evade, rather than quick to perceive and diligent to apply, the meaning of the words it contains in their plain, ordinary, and popular sense." (p. 688.)

Without approving or disapproving the criticism contained in the opinion of the United States court of appeals, it is sufficient to say that the policy under consideration was evidently phrased with the purpose of avoiding the effect of the decisions of the state courts. If ordinary English words, given their ordinary meaning, can accomplish such a purpose, those employed in the policy sued on did so.

The judgment of the district court is affirmed.