Northern Trust Company, Appellee, v. Central Life Insurance Company of Illinois, Appellant.

**Gen. No. 37,341.**

Heard in the first division of this court for the first district at the February term, 1934. Opinion filed April 30, 1934. Rehearing denied and supplemental opinion filed May 14, 1934.

STEBBINS, McKINLEY & PRICE and JOHN M. ALLEN, for appellant; LEWIS A. STEBBINS, of counsel.

HIRSCH E. SOBLE, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff, the beneficiary in a life insurance policy issued by defendant on the life of Joseph Friedman, brought an action to recover $20,000 claimed to be due

o

it under the terms of the policy. The policy was for $10,000 and there was a rider attached which provided for double indemnity payment of $20,000 under certain circumstances. There seems to have been no contention but that defendant was liable for the face amount of the policy, $10,000, and this phase is out of the case. The only question before the court was whether the defendant was liable for the double indemnity provided for in the rider attached to the policy. The case was tried before the court without a jury on a stipulation of facts. There was a finding and judgment in plaintiff's favor for $11,250, and defendant appeals.

It is stipulated that Joseph Friedman, the insured, came to his death accidentally as a result of breathing, while sane, "atmosphere which was full of carbon monoxide gas, which is a deadly poison, emanating from a certain automobile," and that the sole question for decision is whether or not, as a matter of law, the beneficiary of the policy is entitled to recover upon the double indemnity provision of the policy. The double indemnity rider, after providing that the company would pay $20,000 in lieu of the face amount of the policy upon receipt of due proof of the death of the insured under certain conditions not involved here, contains the following: "This Double Indemnity Benefit shall not be payable if the insured's death resulted from self-destruction, whether sane or insane; from the taking of poison or inhaling of gas, whether voluntary or otherwise." The construction of this provision is the one question in controversy.

Defendant's contention is that since the insured, Joseph Friedman, came to his death by accidentally breathing gas from an automobile, no recovery can be had because the double indemnity provision above quoted expressly states that the double indemnity shall not be payable if the insured's death results from the "inhaling of gas, whether voluntary or otherwise."

On the other hand, plaintiff's position is that the words "the taking of poison or inhaling of gas, whether voluntary or otherwise," mean "the intentional inhaling of gas, whether sane or insane," and do not include "the accidental and unknowing breathing of carbon monoxide gas while sane." A further contention of plaintiff is that regardless of the meaning of the wording of the double indemnity rider, the defendant is liable because at the bottom of the first page of the policy and on the back of it, which is called the fourth page, the following words were stamped: "with double indemnity benefit from accidental death."

We will dispose of plaintiff's second contention first.

A photostatic copy of the policy is in the record. It is a document about 17 inches in length and 11 inches wide. At the bottom of page one the words in question seem to have been placed there by a rubber stamp. And again, the same rubber stamp seems to have been used on what would be the outside or face of the policy when folded. The words are not very conspicuous. Plaintiff's argument is that these words stamped on the policy as stated, "are controlling and decisive, and defeat defendant's contention"; that when the policy was presented to the insured he undoubtedly must have understood that he was being insured for double indemnity for accidental death, and therefore these words "should be held virtually to estop it (defendant) from now taking a position inconsistent therewith"; that in case of ambiguity or uncertainty in a policy, the rule of law is to construe it most strongly against the insurance company. While there is some merit in the contention, we think it cannot be sustained. We think an insurance company ought not be permitted to display prominently in a policy the statement that the insured is obtaining certain insurance, and then later on in the policy in small print cut down or explain away such insurance. And while we do not wish to be understood as placing our approval on the

use of the rubber stamp on the policy in question in the manner indicated, yet we are of opinion we would not be warranted in eliminating from the double indemnity rider all of the provisions which specifically state that under the conditions named the double indemnity was not payable. The provision of the rider in question expressly states that the double indemnity is not payable if the insured's death resulted from self-destruction, whether sane or insane, from committing an assault or felony, from war or police duty, from the insured's engaging in riot or insurrection, or from riding as a passenger in an aeroplane, etc.

If plaintiff's contention were sustained, the double indemnity would be payable without any exception. We think the policy cannot be given this construction.

The question then is, What is the meaning to be given to the wording of the rider which provides that the double indemnity benefit ''shall not be payable if the insured's death resulted from . . . inhaling of gas, whether voluntary or otherwise''?

As stated, plaintiff's contention is that recovery can be had since the insured unintentionally inhaled gas. Defendant's position is that the inhaling of gas ''voluntarily or otherwise'' means the same as though the policy read that the double liability would not arise if gas was inhaled by the insured whether voluntarily or involuntarily,—that there was no liability under this policy in case the insured died as the result of inhaling gas.

Counsel for plaintiff chiefly rely on the cases of *Healey v. Mutual Accident Ass'n,* 133 Ill. 556; *Travelers' Ins. Co. v. Dunlap,* 160 Ill. 642; *Metropolitan Accident Ass'n v. Froiland,* 161 Ill. 30; *Fidelity & Casualty Co. v. Waterman,* 161 Ill. 632; *Travelers' Ins. Co. v. Ayers,* 217 Ill. 390; while counsel for defendant cites *Porter v. Preferred Accident Ins. Co.,* 95 N. Y. S. (App. Div.) 682; *Riley v. Inter-State Business Men's*

*Accident Ass'n,* 184 Iowa 1124; *Kennedy v. Aetna Life Ins. Co.,* 31 Tex. Civ. App. 509; *Birss v. Order of United Commercial Travelers of America,* 109 Neb. 226; *Minner v. Great Western Accident Ass'n,* 99 Kan. 575, and other cases.

The wording of the policies in none of the cases cited is the same as the provision in the rider under consideration, and we can come to a better interpretation of the words in question by a reading of them than by analyzing and distinguishing cases, or in any other way. The rider says that the double indemnity benefit shall not be payable if the insured's death resulted from the "inhaling of gas, whether voluntary or otherwise." We think this means that if the insured died as a result of inhaling gas, no recovery can be had under the rider. It was intended that there would be no double indemnity if the insured died as a result of inhaling gas, whether inhaled voluntarily or involuntarily. To give to the words the meaning contended for by counsel for plaintiff, the words "or otherwise" would have to be eliminated, and we think we are not warranted in eliminating those two words, but must construe the contract as made by the parties, giving effect to all of it.

Obviously the parties had the right to so contract if they desired. The rider provided that the double indemnity was not payable if the death of the insured resulted from self-destruction, whether sane or insane. The company had a right to insert this provision. It had equally such right to provide that the double indemnity should not be payable in case the insured died from inhaling gas.

In *Porter v. Preferred Accident Ins. Co. (supra),* 95 N. Y. S. 682, 683, where an accident policy, by express terms, relieved the company from liability from injury caused by the "voluntary or involuntary inhalation of any gas" by the insured, it was held that

no recovery could be had where the insured died from the effects of gas accidentally inhaled by him while in a hotel room. The court there said (p. 683): "It must be conceded that an accident insurance company has the right to limit its liability in any reasonable manner; has the right to provide that in no case will it be liable if the death of the insured results from the effects of gas, inhaled voluntarily or involuntarily. We think that was the intention of the parties as indicated by the express language used in the policy in question. The meaning is no different than if the policy provided that the defendant would not be liable if the death of the insured resulted from the effects of dynamite, a railroad accident, or from yellow fever. The words employed in the exemption from liability clause quoted clearly indicate an intention to avoid liability where death is caused by the inhalation of gas. Concededly gas was inhaled by the deceased and such inhalation caused his death. It was not voluntary, but non-liability for the death of the insured by the involuntary as well as by the voluntary inhalation of gas was provided for. The words . . . must mean that, if the death of the insured resulted from the voluntary or involuntary inhalation of gas, no recovery could be had."

In the *Birss* case, *supra* (109 Neb. 226), the insured in examining the flow of an oil well in attempting to measure the amount of oil in several tanks, became suffocated from inhaling poisonous gas, as a result of which he died. The policy provided that "Benefits . . . shall not cover . . . any death . . . resulting from . . . inhaling of gas . . . (voluntary or involuntary, conscious or unconscious)" and it was held that no recovery could be had.

In the *Minner* case, *supra* (99 Kan. 575) an insurance policy provided for two kinds of indemnity, accident and sickness; disability occasioned by gas was

classified as sickness. The policy provided, "Disability or loss, fatal or otherwise, caused by or resulting wholly or in part, directly or indirectly, from . . . gas, . . . in any manner taken or administered, voluntarily or involuntarily, . . . shall be classified as sickness," subject to the provisions and conditions contained in the policies. And it was held that no recovery could be had for the death of the insured caused by accidentally and unintentionally breathing illuminating gas.

*Healey v. Mutual Accident Ass'n, supra* (133 Ill. 556), cited by plaintiff, was an action on an accident insurance certificate. It was alleged in the declaration that the assured's death was caused "through external, violent and accidental means, within the intent and meaning of the certificate," by accidentally taking and drinking poison. The certificate was set out in the declaration. It provided that in case of the insured's death certain payments would be made to his wife, the beneficiary, if the insured "shall have sustained bodily injuries, received by or through external, violent and accidental means . . . and such injuries alone shall have occasioned death." A demurrer was sustained to the declaration. The Appellate Court affirmed the judgment, but on appeal to the Supreme Court it was reversed; the court held that the insured came to his death from extreme and violent means as provided in the policy. Obviously this case is not in point.

*Travelers' Ins. Co. v. Dunlap, supra* (160 Ill. 642), was an action on an accident policy. The insured came to his death as a result of taking, through mistake, carbolic acid instead of medicine. The policy provided that the company would not be liable where death occurred as a result of taking poison, and it was held that this provision was applicable only where the poison was intentionally taken, and since the evidence

showed that the insured unintentionally and accidentally took the poison, recovery was allowed.

To the same effect was the holding in *Metropolitan Accident Ass'n v. Froiland, supra* (161 Ill. 30).

In *Fidelity & Casualty Co. v. Waterman,* 161 Ill. 632, suit was brought on an accident insurance policy which insured against death "through external, violent and accidental means." The policy also contained a provision for a weekly indemnity in case of bodily injury not causing death. The insured was asphyxiated by accidentally inhaling illuminating gas in his hotel room in Aurora. The policy provided: "This insurance does not cover disappearances; nor war risk; nor voluntary exposure to unnecessary danger; nor injuries, fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled; nor injuries, fatal or otherwise, received while or in consequence of having been under the influence of or affected by, nor resulting directly or indirectly from, intoxicants, anesthetics, narcotics, sunstroke, freezing, vertigo, sleep-walking, fits, hernia, or any disease or bodily infirmity." The court, after quoting the foregoing provision, analyzed a number of authorities, including *Paul v. Travelers' Ins. Co.,* 112 N. Y. 472, and in construing the provision above quoted, said (p. 636): "Read in the light of the decisions, the words now in question do not mean otherwise than if they explicitly read, 'poison or anything accidentally or otherwise, consciously and by an act of volition, drawn into the system by inspiration,'" and the judgment was affirmed.

In *Travelers' Ins. Co. v. Ayers, supra* (217 Ill. 390), it was held that a provision of an insurance policy that the insurance should cover death resulting wholly or partly, directly or indirectly "from any gas or vapor" did not exempt the company from liability for death by asphyxiation caused by the accidental escape of gas

into the room and the unconscious inhaling of the gas by the insured while asleep.

We think none of the cases cited by plaintiff, above referred to, is in point. The provisions of the policies of insurance involved in those cases are not the same as the provision in the policy before us in the instant case. We hold that no recovery can be had under the double indemnity provision of the policy because the insured came to his death as the result of "accidentally inhaling gas," and in such case liability is expressly exempted.

The judgment of the superior court of Cook county is reversed, but the cause will not be remanded for the reasons stated.

*Judgment reversed.*

MATCHETT, P. J., and McSURELY, J., concur.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING.

Plaintiff in its petition for a rehearing again argues that the words stamped on the face and back of the policy, viz., "With double indemnity benefit from accidental death," ought to estop the defendant from contending that double indemnity was not payable under the policy.

We are entirely satisfied with what we have said in the opinion in disposing of this contention, except that it may be that the defendant insurance company, in stamping these words on the face and back of the policy, was endeavoring to comply with paragraph 12 of section 1 of the Act regulating the conditions and provisions of life insurance policies. Cahill's 1933 Statutes, pp. 1650, 1652.

That Act provides that after January 1, 1908, "no policy of life insurance shall be issued or delivered in

this State or be issued by a life insurance company organized under the laws of this State, unless the same shall provide the following:'' Then follow a number of paragraphs as to what such policy shall contain, and paragraph 12 of that section is as follows: ''(12) Title on the face and on the back of the policy, correctly describing the same.''