# Mohan v. Union Fidelity Life Insurance Company

*Benjamin Pomerantz*, for plaintiff.

*Lee B. Sacks*, for defendant.

SLOANE, P. J., September 7, 1965.—Plaintiff, as insured, purchased from defendant, as insurer, a policy of insurance entitled "Comprehensive Health Protection Policy". The policy insured against loss "resulting directly and independently of all other causes from accidental bodily injury".

An endorsement to this policy, and it is attached to the policy, states in bold letters that leap to the eye: " 'PAYCHECK-PLUS' SICKNESS AND ACCIDENT BENEFIT ENDORSEMENT".

This language is our focal point. Plaintiff contends that, having incurred an injury covered by the policy, he is entitled to his "paycheck" for wages lost due to his injury, as well as the "plus", the benefits enumerated in the policy.

Defendant admits the policy to be in full force and effect, that plaintiff suffered a covered injury and that plaintiff is due certain payments as specified in the policy.[1] But defendant denies liability for wages lost while plaintiff was out of work due to his injury.

Plaintiff, in a nonjury trial, was awarded a verdict for his "Paycheck" for the time he was out of work.[2]

There is no factual dispute. Resolution of this case depends upon an interpretation of the policy.

"Schedule 'A' of Benefits Provided" is a chart with a series of blocks for the protections available under the policy. The blocks for "purchased protections" are filled in with the amount of benefits payable. Thus, following the line of the endorsements entitled "Paycheck Plus" will be found plaintiff's benefits. These are $100 for "Weekly Hospital Benefits" and $200 for "Monthly Disability Benefits".

The application is attached to the policy and, relevant to this dispute, it will be seen that one of the questions is "Monthly Earnings", which plaintiff indicated to be $450.

The verdict for plaintiff was upheld by a court en banc (Judges Gleeson and Sloane), one judge dissenting (Judge McClanaghan).

## I.

Hessler v. Federal Casualty Co., 190 Ind. 68, 129 N.E. 325 (1921), is a leading case holding that "headlines" of insurance policies should be considered together with the body of the policy. In Hessler, an accident insurance application carried the notation: ". . . it also covers all bodily injuries caused by accidental means, such as, . . . gunshot wounds, . . . injuries in-

---

[1] Plaintiff was paid these benefits; he had an additional claim, at trial, for time spent in a nursing home. This claim was not allowed; plaintiff filed no exceptions.

[2] The amount of the verdict is not in dispute.

flicted by robbers or highwaymen, . . .", but in the body of the policy there was a 20 percent limitation on liability, clause (m) excepting loss for injuries "intentionally inflicted upon the assured by himself or by any other person". The court there said, at page 74, 76, 129 N.E. at 327:

"In construing a policy of accident insurance, words printed on the back of the policy, purporting to sum up what is embraced by it, constitute a part of the contract, and are to be taken into consideration in its construction. . . .

"There is hardly room for doubt that, when the policy with the quoted statement printed on the back of it was presented to the insured in soliciting his application for insurance and collecting the initial premium, he would understand that he was insured for $500 against death inflicted by a gun in the hands of a robber who might invade his working place, and that the appellee company printed those words below the application on the back of the policy with the intention that the insured should so understand his contract. The construction thus suggested to induce the execution of the contract and the payment of premiums must be adhered to in settling for a loss covered by the policy".

Similarly, in Walker v. Commercial Casualty Insurance Co., 191 S.C. 187, 4 S.E. 2d 248 (1939), plaintiff, beneficiary of a life insurance policy, sued for $300 indemnity for death from natural causes. The policy in large, bold, black type contained the following statement on the back and at the top of the page immediately preceding the policy:

"This policy provides indemnity for loss of life, limb, limbs, sight or time caused by accidental means, or for natural death, or for disability by illness to the extent herein provided".

The trial court there found for defendant, because in the body of the policy there was no provision to cover

indemnity for natural death. He was reversed. That Supreme Court took note of the headline: "In this statement it is clearly and unequivocally stated that the policy provides indemnity for natural death": 4 S.E. 2d, at 250. The insurance company conceded that the headline constituted a part of the policy. That court held: "Considering this statement as a part of the contract, we think it is clear that the contract is reasonably susceptible of the interpretation that it covers indemnity for death from natural causes". The court added, however: "Even though such statement be not considered as a part of the contract, it represents a construction which the company itself has placed upon the contract": 4 S.E. 2d, at 250-51.[3]

New York Life Insurance Co. v. Hiatt, 140 F.2d 752 (9th Cir., 1944), involved a life insurance policy with a double indemnity provision. Stamped on the cover page of the policy in purple ink was the statement: "double indemnity for fatal accident". The same phrase was stamped near the bottom of the first page of the policy. The insured died from inhalation of carbon monoxide. The terms of the policy, aside from the stamped matter, provided that double indemnity would not be paid if death resulted from the inhalation of gas, voluntary or otherwise. It was undisputed that the insured died from an accident. The trial court held for plaintiff, a finding that was affirmed, page 753:[4]

---

[3] Doty v. American National Ins. Co., 350 Mo. 192, 165 S.W. 2d 862 (1942), held that the title, "Whole Life Policy", was properly considered in determining the type of policy so as to compute the reserve value of the policy.

[4] Contra: Northern Trust Co. v. Central Life Ins. Co., 274 Ill. App. 551 (1934), which held in similar facts that double indemnity was not payable:

"If plaintiff's contention were sustained, the double indemnity would be payable without any exception. We think the policy cannot be given this construction": 274 Ill. App. at page 554.

Hiatt noted this Northern Trust decision, and said:

"It is argued that the stamped phrase is too brief and incomplete to be given substantive effect. But to the lay mind the phrase represents the concise expression of a readily comprehensible thought. The average layman knows what double indemnity means and he has a pretty fair notion of what a fatal accident is. To him, the term comprehends all forms of death suffered accidentally. Not inconceivably, the presence of the stamped matter was the decisive factor in effecting the sale of the policy. . . ."

"Here the insurer could easily have avoided ambiguity and eliminated all deceptive repugnancy by adding to the stamped matter some brief expression calling attention to the limitations contained in the rider . . . Even a careful reading of the whole instrument would not improbably leave in the uninitiated mind the belief that the specially stamped phraseology was intended

"With all deference to the Illinois court, we think this is not the way to promote fair speaking in insurance policies. Misleading double-talk in these contracts cannot be effectively discouraged by the mere wagging of an admonitory finger": 140 F. 2d at page 754.

But cf. Mosby v. Mutual Life Ins. Co., 405 Ill. 599, 92 N.E. 2d 103 (1950), where the Illinois Supreme Court, in considering a disability policy, held that proof of disability was not required before the insured reached age 60, and relied, in part, on the policy headline, "Benefits in the Event of Total and Permanent Disability before Age 60". The court said, without noting Northern Trust:

"To infer in large and heavy print that the insurer is liable for total and permanent disability before age sixty, and then in smaller type and standard inking below to use language which purportedly limits the insured's [sic] liability . . . is so misleading as to create an ambiguity which must be resolved in favor of the insured. It is true that paragraph captions in policies are not required to be drawn so as to include every requirement in the policy. Continental Casualty Co. v. Trenner et al., D. C. 35 F. Supp. 643. However, it must also follow that the captions should not be repugnant or misleading as to the requirements or coverage in the policy": 405 Ill. at 607, 92 N.E. 2d at 107.

to afford a measure of protection broader than that indicated in the printed language of the rider".

Defendant relies mainly on Maryland Casualty Co. v. Massey, 38 F. 2d 724 (6th Cir., 1930), cert. den. 282 U. S. 853 (1930), where a policy insuring against death from accidental means was held not to cover death from an infection caused by the insured intentionally plucking a hair from his nose. That plaintiff relied on the policy headline, "Perfection Accident Policy". The court held this was not determinative:

"The policy covered death from bodily injuries effected directly through accidental means. Some effort is made to interpret the policy as covering death from all accidental injuries, however effected, in reliance upon the designation 'Perfection Accident Policy' printed upon the outside and at the top of the contract, followed by the statement that it 'provides indemnity for death . . . due to accidental injuries.' It is sufficient to say that such designation is not part of the contract, that it is merely an indication of its general nature, and that the qualifying phrase, 'as herein limited and provided', is a sufficient challenge to the holder that the terms of the policy rather than any general designation are to be looked to for the measure of protection provided": 38 F. 2d at page 725.[5]

Although the death in Massey was accidental, it was not from accidental means, since the insured pulled the hair from his nose as one does with the intention to do so. The language of the court quoted above that the headline is not a part of the policy,[6] should be con-

---

[5] Noted but not followed, Sterneck v. Equitable Life Insurance Company of Iowa, 237 F. 2d 626 (8th Cir., 1956), in view of Missouri law that headline is part of policy, Doty v. American National Ins. Co., supra, F. N. 3. In Sterneck the headline interpretation was an aid to a decision in favor of the insurer.

[6] Accord: Hill v. Travelers Ins. Co., 146 Iowa 133, 124 N.W. 898 (1910), where the headine was "Limited Health Policy on

sidered in the light of the qualifying words used, *"as herein limited and provided"*. This put the insured on notice that the headline was not determinative as a characterization of the policy, but in the "Paycheck Plus" endorsement there is no such qualifying language in the bold heavy type.

Continental Casualty Co. v. Trenner, 35 F. Supp. 643 (E.D. Pa., 1939), is cited by defendant. One paragraph of an automobile liability policy was entitled "Automatic Insurance for Newly Acquired Automobiles". The text of the paragraph required notice to the company within 10 days of delivery of any new automobile for coverage to apply to the new automobile. The insured had an accident in a new automobile more than 10 days after he had acquired it, and he had not given notice. The court stated: "There would be no question at all about it except for the word 'automatic' in the bold cap title of the clause": 35 F. Supp. 643, 644. That court held this was not so misleading as to create a duty on the insurance company without having received the required notice. This case is not dispositive of the "Paycheck-Plus" problem; the headline there was only for a paragraph and not for the entire endorsement; notice is a prime and not uncommon requisite in an insurance policy.

Though we could find no Pennsylvania cases considering the effect of an insurance policy "headline", the better authority allows headlines to be considered in interpreting a policy.

## II.

Two further contentions, one by plaintiff and one by defendant, should be met.

Plaintiff offered to show that defendant's agent told

---

Life of . . ." and the court held this language was not broad enough to make death a disability within meaning of policy. However, neither this language nor "Perfection Accident Policy" are as specific as "Paycheck-Plus".

plaintiff that the policy would compensate for loss of wages as well as for hospital expenses. Defendant objected to the admissibility of this testimony, and properly so.

Good v. Metropolitan Life Insurance Company, 166 Pa. Superior Ct. 334 (1950), supports defendant. There, the insured's beneficiary similarly sought to avoid the effect of an aeronautical rider limiting indemnity by parol. The court said:

"Testimony as to the alleged oral agreement with defendant's agent was received subject to defendant's objection. The policy contained an 'Entire Contract' clause which limited the contract to the policy and the application attached. The policy also contained a clause to the effect that an agent had no authority to bind defendant beyond the contract as written. Assuming the admissibility of the evidence as to representations by the agent, such evidence failed to meet the standard required to reform a written instrument [citing cases]. Rather, it purported to relate to an oral agreement between the witness and defendant. Nor did appellant [the beneficiary] show any authority in the agent to vary the written contract of insurance by parol evidence".

Pennsylvania courts generally follow a strict parol evidence rule, and demand clear, convincing evidence of fraud, accident or mistake before allowing parol evidence about preliminary negotiations or verbal agreements: Bugen v. New York Life Insurance Company, 408 Pa. 472 (1962), Rosner v. Zurich Insurance Company, 197 Pa. Superior Ct. 90 (1962).[7]

---

[7] Gianni v. R. Russell & Co., Inc., 281 Pa. 320 (1924), states the modern rule, and changed the early Pennsylvania cases which allowed parol "where there has been an attempt to make a fraudulent use of the instrument, in violation of a promise or agreement made at the time the instrument was signed, and without which it would not have been executed": Phillips v. Meily, 106 Pa. 536,

The policy of the parol evidence rule, ". . . it is essential that the integrity of written contracts be maintained" (United Refining Company v. Jenkins, 410 Pa. 126, 134 (1963) ), prevents the admissibility of the agent's testimony. Plaintiff's policy also contained an "entire contract" clause.[8]

Holmes' admonition, "Attempts of parties to tie up by contract their freedom of dealing with each other are futile" (Bartlett v. Stanchfield, 148 Mass. 394, 395 (1889) ), explains the various exceptions to the parol evidence rule to avoid unfair or absurd results. But plaintiff here cannot claim under an exception; he must stand on the written policy alone.

Defendant asserts that because all policies of insurance must be reviewed and approved by the insurance commissioner,[9] and because the style and size of type is regulated by statute,[10] therefore no cause of action can rest on the form of the policy. It is sufficient answer that these provisions are regulatory and designed to further administrative control over insurance com-

---

543 (1884). For a critical analysis of this now discarded holding, see 9 Wigmore, Evidence (3d ed., 1940) §2431; Note, Critique of the Parol Evidence Rule in Pennsylvania, 100 U. Pa. L. Rev. 703 (1951).

[8] "ENTIRE CONTRACT: CHANGES: This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions".

[9] Act of May 17, 1921, P. L. 682, as amended, 40 PS §477(b) : "It shall be unlawful for any insurance company . . . to issue . . . any policy . . . covering health, accident . . . insurance . . . or use endorsements, in connection therewith, until the forms of the same have been submitted to and formally approved by the Insurance Commissioner . . ."

[10] Act of May 17, 1921, P. L. 682, as amended, 40 PS §752 (A) (4), which, however, excludes the title and a brief description of the policy from the type size regulations.

panies. They are not conclusive for all time on the liability of the company, and courts are in no way bound to accept an insurance company's own interpretation of its policy form simply because the insurance commissioner has approved the form. Defendant's reasoning is non sequitur, and, like non sequiturs, bounces off reason.

### III.

Policy considerations in this kind of controversy are important and deserve articulation. Contra proferentem expresses succinctly the familiar principle that insurance policies be strictly construed against the insurer, and that ambiguities and doubts and equivocal words be construed against the insurer and be resolved in the insured's favor. See Burns v. Employers' Liability Assurance Corporation Limited, 205 Pa. Superior Ct. 389, 394 (1965), and cases cited therein. This principle is applicable to this type of health-accident insurance, offered at a low premium and conceivably sold in high volume. The sale probably is accompanied by little negotiation, actually, a limited choice of differing benefits with varying premiums. The attractiveness of the policy no doubt is made known to the prospective purchaser.

The proper test used for interpreting insurance policies is ". . . what the drafter of the instrument might reasonably anticipate to be the effect upon an untrained mind for it is to that class that the instrument is designed to be offered": Trousdall v. Equitable Life Assurance Soc., 55 Cal. App. 2d 74, 81, 130 P. 2d 173, 177 (1942).

This is requisite "in order not to defeat, without plain necessity, the claim to indemnity which it was the insured's object to obtain": Blue Anchor Overall Co. v. Pennsylvania Lumbermen's Mutual Insurance Company, 385 Pa. 394, 397 (1956).

"Paycheck" is an alluring word, plump with mean-

ing and a bolstering incitement for the purchaser of a health-accident policy.[11] The simple thought is the plain thought that the policy will pay the "paycheck".[12]

Since defendant wrote the policy, there is as high a duty on it to be straightforward about it as the duty on plaintiff to scrutinize its terms.

The intent of the policy, so conspicuously manifest in its bold headline,. makes obvious the need for this high duty. Those cases which hold headlines to be part of a policy, and interpret policies giving weight to the headline, are thinking, acceptable precedents for this court to give due weight to "Paycheck-Plus". These inducing words appear at the top of the endorsement,

---

[11] "Words of common usage in a policy of insurance will be construed in their natural, plain, and ordinary sense, but if technical words are used, they will be construed in their technical sense unless a contrary intention clearly appears": Blue Anchor, supra, 385 Pa. at 397, 398. "Paycheck" is certainly a common word with a common meaning. "If the language [the company] adopts in its contract is capable of two constructions, it cannot be permitted to adopt one meaning in selling the policy and another in avoiding liability": Deer v. Employers Indemnity Corporation, 77 F. 2d 175, 176 (7th Cir., 1935), citing Mutual Life Ins. Co. v. Hurni Packing Company, 263 U. S. 167 (1923).

[12] Part V of the Paycheck-Plus Endorsement entitled "Exceptions" supports this finding:

"The insurance provided under this Benefit Endorsement does not extend to or cover any loss pertaining to the Insured or any named dependents when not gainfully employed at the time of disability".

Although the insurance company's purpose for inserting this clause might be otherwise, a reasonable interpretation is that the endorsement will provide benefits fully compensatory of any loss of earning power. A prospective policy holder might reasonably equate "Paycheck" with "gainfully employed" and assume that he could receive no benefits for the loss of his "Paycheck" when he had none at the time of disability; and with equal logic, that if he was gainfully employed at the time of his disability, he would receive as part of his benefits an amount equal to his "Paycheck".

on the schedule of benefits, and relevant indeed is the application asking plaintiff his monthly earnings.

Defendant says it used the word "Paycheck" without purpose; it is meaningless. Defendant argues fronti nulla fides. This should not avail, for promise and good faith are synonymous. Defendant should be held down to the foot of its own word. Plaintiff, under this policy, has a right to his "Paycheck".

We should be moderate in criticism and not sharp with salty expletives, but it seems to us this defendant should not be allowed to misguide earners investing in accident insurance, and should be discouraged from practicing puffery. Courts may not want delusive exactness, but they cannot approve misleading equivocations.